| 86 | 341 |
| 44a | 502 |

| 86 | 341 |
| 129 | 508 |

KIRKPATRICK *et al.*, v. THE KANSAS CITY, ST. JOSEPH & COUNCIL BLUFFS RAILROAD COMPANY, *Appellant.*

1. **Practice :** PARTIES : CONSIGNEE, RIGHT OF ACTION OF : RAILROAD : DAMAGES. The consignees of a car load of wheat screenings, shipped over a company's railroad, but which was destroyed before reaching its destination, may maintain an action against the railroad company for the recovery of damages for such destruction.

2. ————— : ————— : ————— : —————. Where the consignee of goods shipped upon a railroad pays the draft drawn on him by the shipper and receives the bill of lading to which the draft is attached, and subsequently purchases the goods from the owner, he thereby becomes the real party in interest under the code. R. S., sec. 3462.

And it makes no difference that the goods were destroyed before the absolute sale, as the property of the owner in them still continued and was the subject of transfer, and the transferee could maintain action for damages for their destruction on the ground of such transfer.

*Appeal from Jackson Circuit Court.*—Hon. T. A. Gill, Judge.

.Affirmed.

Plaintiffs were merchants residing and doing business in Kansas City. H. B. Slaughter, a grain dealer, residing and doing business there, contracted for two car loads of wheat screenings with H. C. Goodell, of Winthrop (or East Atchison), Mo. On the twenty-fifth of March, Slaughter went to Winthrop, examined the car load of screenings in controversy, accepted it, took a sample of it, and instructed Mr. Goodell to bill the car to plaintiffs at Kansas City, and draw on them for the price, attaching draft to bill of lading, as he might not be at home when it arrived there, and he had arranged with plaintiffs to take care of the draft if he was away from town, which Goodell accordingly did. Plaintiffs paid the draft, amounting to $215.05, on presentation, and charged the amount to Slaughter on their books. On the twenty-ninth of March the screenings were totally destroyed by the wrecking of the car while in course of transportation over the defendant's line, at a point about four miles below Winthrop.

Some time between two and three weeks after the twenty-fifth day of March, plaintiffs purchased the screenings of Slaughter, by the sample he had, for eighty-five cents a bushel, and it was agreed between them that sixty pounds should be considered a bushel; that Slaughter should deliver the screenings to the State Line Elevator, at Kansas City, the screenings to be there weighed and paid for by the elevator weights. Having

learned that the screenings were destroyed, the plaintiffs and Slaughter, on the third day of May, agreed to adjust the matter between them on the basis of Goodell's Atchison weights, which was accordingly done, and the price of the screenings at eighty-five cents per bushel, Atchison weights, was credited to Slaughter on plaintiffs' books. Plaintiffs demanded of defendant the value of the screenings at eighty-five cents a bushel, which being refused, they instituted this action in the Jackson circuit court.

On behalf of the plaintiffs, the court, at their request, gave to the jury the following instructions :

"1. If the jury believe from the evidence that the defendant did receive from H. C. Goodell the grain described in the petition, the property of H. B. Slaughter, and did execute the contract read in evidence, the defendant thereby agreed to safely convey and deliver said goods to Kirkpatrick & Christopher, at Kansas City, Missouri, and if the jury further believe from the evidence that said Slaughter afterwards sold and transferred said grain and said contract to plaintiffs, and that defendant failed to deliver said goods to said Kirkpatrick & Christopher, at Kansas City, Missouri, that they must find for the plaintiffs."

"2. If the jury find for the plaintiffs, they are instructed that the measure of damages to be allowed the plaintiffs is the value of the grain at Kansas City, at the time the grain should have arrived, with interest at six per cent. from said time, after deducting freight and other expenses of transportation."

The court, on its own motion, instructed the jury as follows :

"That, in order to constitute a valid sale and delivery of the screenings by Slaughter to plaintiffs, Slaughter must have done everything which, by the terms of the bargain, was incumbent on him to do ; he

must have intended to part with his possession of the screenings, and must have actually parted with the possession thereof, and the plaintiffs must have received said screenings with the intention and for the purpose of holding the same as owner. But the court instructs the jury that a delivery of the bill of lading read in evidence 'to' the plaintiffs, if, in fact, there was such a delivery, constitutes a sufficient delivery of the screenings to pass title thereto."

*Strong & Mosman* for appellant.

(1) Only "the person to whom the promise is made and with whom it is to be performed, is entitled to sue" on a special contract or undertaking for the carriage of merchandise. *Gardner v. Armstrong,* 31 Mo. 538; *Southern Express Co. v. Craft,* 49 Miss. 480; s. c., 19 Am. Rep. 4; *Finn v. Western Railroad,* 112 Mass. 524; sec. 499, Angell on Carriers. Section 3462, Revised Statutes, does not alter the common law rule. The party to whom the promise is made and with whom it is to be performed is the real party in interest. *Gardner Case, supra; Craft's Case, supra; Blanchard v. Page,* 8 Gray, 281; *Hale v. Mil. Dock,* 29 Wis. 498. It is not pretended here that there was ever any assignment of the contract for the shipment. In a suit for a violation of the contract, the question, under section 3462, is, who is the real party in interest in the contract itself. In such a case it is a matter of no consequence who owns the subject-matter in relation to which the contract is made. *Harvey v. Railroad Co.,* 74 Mo. 538. (2) Plaintiffs were not the real parties in interest in the contract, and the contract was not made for their benefit. The property in the goods did not vest in the consignee on delivery to the carrier, and he had no lien on or property in them before actual delivery to himself. *Bruce v. Andrews,* 36 Mo.

593; *Sergeant v. Morris*, 3 B. & Ald. 277; *Stattenwerck v. Thatcher*, 115 Mass. 224. (3) The screenings were destroyed before the sale and the sale is void. Benj. on Sales, p. 94, sec. 76; *Hastie v. Courtierer*, 9 Exch. 102; s. c., H. L. C. 673; *Barr v. Gibson*, 3 M. & W. 390; 1 Pars. on Cont. (5 Ed.) 567–8. This was a sale of goods "to arrive," and in order to make it valid they must arrive. 1 Parsons on Cont. (5 Ed.) 552, 554, 555, 567, 568. The sale did not comply with the statute of frauds, and was, therefore, void. 1 Pars. on Cont. 559. As the sale was by sample, until delivery and acceptance was shown, it was wholly executory, and the title to the property remained in Slaughter. *Prescott v. Locke*, 51 N. H. 94; Benj. on Sales, sec. 910, p. 790 (4 Am. Ed.); *Ober v. Carson*, 62 Mo. 209; *Swan v. Shepherd*, 1 Moody & R. 223; *Goodwyn v. Douglass*, 1 Cheves, 174. As by the terms of the sale the property was to be paid for at Kansas City elevator weights, such weighing was a condition precedent to the passage of the property in the screenings. Story on Sales, sec. 220 *b*. and *c*.; 1 Pars. on Cont. 527, note *f*; *Prescott v. Locke*, 51 N. H. 94; *Groff v. Belche*, 62 Mo. 400. For the foregoing reasons defendant's instruction in the nature of a demurrer should have been given; also, its first instruction, and plaintiff's first instruction should have been refused. Plaintiff's second instruction should have been refused.

*Bryant & Holmes* for respondents.

(1) Defendant's answer is simply a general denial, and the point that plaintiffs are not proper parties to maintain this action, not having been specially pleaded, has been waived. R. S., 1879, secs. 3515, 3519; Pomeroy's Rem. & Rem. Rights, sec. 711; *Jackson v. Whedon*, E. D. Smith, 141; *Savage v. Ins. Co.*, 4 Bosw. 1; *Russell v. Clapp*, 7 Barb. 482; *Seeley v. Engell*, 17 Barb.

530; *Brett v. First Universalist Society*, 63 Barb. 610; *Raymond v. Pritchard*, 24 Ind. 318; *Garrison v. Clark*, 11 Ind. 369; *Swift v. Ellsworth*, 10 Ind. 205; *Lamson v. Falls*, 6 Ind. 309. (2) (*a*) That plaintiffs may maintain this action, because they are the consignees. 2 Rorer on Railroads, p. 1330, sec. 5; *Sawyer v. Joslin*, 20 Vt. 172, 181; *Webb v. Winter*, 1 Cal. 417; *Griffith v. Ingledew*, 6 S. &. R. 429; *Southern Express Co. v. Caperton*, 44 Ala. 101; *Pennsylvania Co. v. Holderman*, 69 Ind. 18; *Railroad Co. v. Nelson*, 1 Cold. 272. (*b*) That plaintiffs may maintain this action, because they are the real parties in interest. R. S., 1879, sec. 3462; Rorer on Railroads, p. 1332, sec. 5; *Southern Express Co. v. Caperton*, 44 Ala. 101; *Hooper v. Ry. Co.*, 27 Wis. 81; *Jones v. Sims*, 6 Porter, 138; *Barrett v. Rogers*, 7 Mass. 297. (3) (*a*) Plaintiffs were purchasers of the screenings, within the meaning of the law, from the time of the advancement and receipt of the bill of lading, the symbol of ownership. Rorer on Railroads, p. 1328, sec. 2; *Peters v. Elliott*, 78 Ill. 321; *Railroad v. Phillips*, 60 Ill. 190; *Gibson v. Stevens*, 8 How. (U. S.) 384; *Bank v. Dearborn*, 115 Mass. 219; *Holbrook v. Wight*, 24 Wend. 169. (*b*) Defendant was liable to either plaintiffs or Slaughter, and as Slaughter testified that plaintiffs bought the screenings of him, this would certainly be a satisfaction against Slaughter. *Goodwyn v. Douglass*, 1 Cheves (S. C.) 174. (*c*) As to the statute of frauds, the appellant, being a third party as to the contract between Slaughter and plaintiffs, cannot invoke the application of that statute for its own benefit. Browne on Frauds, sec. 135, and cases there cited. Furthermore, the benefit of that statute, to be availing, must always be pleaded. *Gist v. Eubank*, 29 Mo. 248; *Gardner v. Armstrong*, 31 Mo. 535; *Hoffman v. Ackley*, 34 Mo. 277; *Rabsuhl v. Lack*, 35 Mo. 316.

Mann v. The Chicago, Rock Island & Pacific Ry. Co.

SHERWOOD, J.—Action by plaintiffs, who were con-signees of a car load of wheat screenings shipped on defendant's road, but destroyed before reaching the point of destination. The controlling question in this case is the right of plaintiffs to maintain this action. On this point we entertain no doubt. 2 Rorer on Rail-roads, 1330, sec. 5; *Ib.* 1332, sec. 5; 1328, sec. 2, and cases cited. Moreover, the plaintiffs paid the draft drawn on them and received the bill of lading to which the draft was attached, and subsequently purchased the wheat from the owner, Slaughter. 2 Rorer on Railroads, 1318, sec. 2. They thus became the real parties in in-terest, under the code. Section 3462. The fact that the screenings were destroyed prior to their absolute sale to plaintiffs does not affect the proper conclusion to be reached. The property of Slaughter in the screenings still continued and was the subject of transfer to plain-tiffs, and they could maintain this action on the ground of the transfer, if upon no other.

The instructions given at the instance of plaintiffs, and of the court's own motion, placed the matter before the jury on the theory of the law as above announced, and discovering no substantial error in the record (R. S., secs. 3569, 3775), we affirm the judgment. All concur.