FINIS MORROW and GARY FRANCE, Partners, Doing Business under the Firm Name and Style of MORROW & FRANCE, Respondents, v. WABASH RAILWAY COMPANY, Appellant.*

Kansas City Court of Appeals. November 10, 1924.

1. **CARRIERS: Negligence: Wounded Condition of Animals Received from External Violence During Transportation Repels Presumption Pertaining to Proper Vice and Casts Burden upon Carrier.** Where wounded condition of animals suggests injuries received from external violence during transportation, and evinces a physical con·dition not usually attendant upon carriage with due care, *held* sufficient to repel presumption pertaining to proper vice and to cast burden upon carrier to show it was not negligent.

2. ———: ———: **If Defendant's Negligence Mingled with Inherent Infirmity of Animals Co-operated to Cause Their Injury, Defendant is Liable.** If defendant's negligence mingled with inherent infirmity of animals and proximately co-operated to cause their injury, the defendant is liable.

3. ———: ———: **Evidence as to Defendant's Negligence in Transportation of Animals Held for Jury.** Evidence *held* to show that physical injuries inflicted upon animals during transportation were such as to justify inference that injuries were due to unskillful management of train and sufficient to submit question of defendant's negligence to jury.

4. ———: ———: **Provision of Contract Requiring Notice to Carrier of Injury to Animals Before Removal from its Possession Held Inoperative.** Provision of contract requiring plaintiffs to notify carrier of any injury to animals before they were removed from possession of carrier, *held* inoperative where carrier was first to discover injury, and unloaded animals upon refusal of connecting carrier to accept, thereby prematurely ending shipment, without any notice to plaintiff.

5. ———: ———: **Damages: Difference Between Market Value of Animals Before Injury and Time of Delivery by Carrier in Injured Condition Held not Proper Measure of Damages.** An instruction that measure of damages was difference between market value of animals immediately before injury and value at point when delivered

to carrier in damaged condition, *held* erroneous and evidence as to reasonable market value before injury was improperly admitted.

6. **DAMAGES: Measure of Damages for Injuries to Animals is Difference Between Value at Destination in Damaged Condition and What Value Would Have Been if Uninjured.** Where shipment is injured through cause for which carrier is responsible, the shipper is entitled to recover the difference between value of shipment at destination in damaged state and what value would have been if uninjured.

7. ——: **Measure of Damages for Injury to Animals not Delivered at Intended Destination is Difference Between Value at Time and Place Where Enforced Delivery was Made as Result of Damaged Condition.** Where animals injured during transportation never reached intended destination, measure of damages was the difference between their value at the time and place where they should have been delivered and their reasonable market value at place where animals were removed in injured condition and shipment prematurely ended, less unpaid freight.

8. ——: **Measure of Damages Injured During Shipment and Delayed in Delivery is Difference Between Value at Time They Should Have Been Delivered and Value When Actually Delivered, Plus Expenses Caused by Delay.** Where mules shipped to New Orleans were injured while in transit and unloaded at East St. Louis and kept there for several weeks in an effort to restore them to good condition, and then reshipped to·New Orleans and sold, measure of damages is difference between market value at New Orleans where delivery should have been made and their value upon *arrival,* plus cost of reconditioning and expense of reshipment to New Orleans less unpaid freight.

9. **CARRIERS: At Common Law Carrier Liable for All Losses, Except Those Caused by Act of God, Public Enemy or Inherent Nature of Freight.** At common law carrier is liable for loss occasioned by causes other than its negligence, except loss by act of God, the public enemy, or inherent nature of freight.

10. ——: **Rights and Liabilities Arising from Interstate Shipment Depend on Acts of Congress, Contract and Common-law Principles Accepted and Applied in Federal Courts.** Rights and liabilities of parties arising from interstate shipment depend upon acts of Congress, the contract between parties and common-law principles accepted and applied in the Federal court.

11. ——: **Notwithstanding Carmack Amendment, Carrier May Reasonably Contract Against its Strict Common-law Liability.** Notwith-

standing passage of Carmack Amendment (U. S. Comp. St., sections 8604a, 8604aa), rigor of common-law rule against carrrier may be modified by special contract understandingly and reasonably made limiting its strict common-law liability.

*Corpus Juris-Cyc. References; Carriers, 10 C. J., p. 108, n. 82; p. 123, n. 40, 41; p. 132, n. 13; p. 187, n. 79; p. 313, n. 55, 57; p. 340, n. 66; p. 381, n. 36; p. 386, n. 50; p. 391, n. 30; p. 396, n. 77; p. 398, n. 1; p. 401, n. 40. Commerce, 12 C. J., p. 86, n. 48; p. 137, n. 46; p. 370, n. 46 New. Damages, 17 C. J., p. 879, n. 31. Pleading, 31 Cyc, p. 700, n. 18.

Appeal from the Circuit Court of Macon County. —*Hon. Vernon L. Drain,* Judge.

REVERSED AND REMANDED.

*Lacy & Edwards* for respondents.

*Homer Hall, Franklin & Van Cleve,* and *John N. Franklin* for appellant.

BLAND, J.—This is an action to recover damages for loss sustained by plaintiff to a carload of animals consisting of fourteen horses and ten mules. The evidence shows that on March 25, 1923, plaintiffs and defendant entered into a contract whereby defendant agreed to ship the livestock in question from Macon, Missouri, to New Orleans, La. The shipment did not reach New Orleans. On account of their bruised and maimed condition when they arrived at East St. Louis the connecting carrier at that point refused to accept the stock for further shipment and with the exception of two mules it was sold there by plaintiffs. The petition seeks to recover the difference between the value of the stock before they were delivered to the defendant for shipment and their value when they arrived in East St. Louis. There was a verdict in favor of plaintiffs in the sum of $750 and defendant has appealed.

Plaintiffs' evidence tended to show that the shipment began on the night of Saturday, March 25, and that

the stock arrived in East St. Louis on the morning of Monday, March 27th, in a bruised and maimed condition although the horses and mules were in good condition, gentle and well-disposed at the time of their delivery to defendant at Macon; that before they were shipped they had been kept together in the same barn and pen and showed no evidence of being vicious or of a fighting disposition. Plaintiffs did not accompany the shipment but one of them, Morrow, found on his arrival at East St. Louis that the stock had been removed from the car and were in a barn at the Stock Yards. The agent of the connecting carrier refused to accept them for further shipment on account of their condition. A veterinary examined the stock and found that—

"There was a black gelding in the shipment, both eyes bruised and swollen, left eye swollen shut, left front leg bruised and swollen from hock to body; left hind leg bruised and swollen; animal quite lame and sore. There was a black mare in the shipment, six years old, sixteen hands high, both eyes bruised and swollen, right front leg bruised and swollen from below knee to body. Bruised and swollen under belly, right hind leg bruised and swollen from ankle to above hock. Vulva bruised and swollen. Animal looks like had been down in car; animal sore and lame. There was a gelding eight years old, about sixteen hands high, left hind leg bruised and swollen, animal sore and lame. Sorrel mare, six years old, fifteen hands high, right stifle bruised and swollen, animal quite sore and lame. Bay mare mule, sixteen hands high, six years old, bruised and skinned on inside of left hind leg. Black mare mule, right eye bruised and swollen, right knee bruised and swollen, animal lame."

Plaintiff Morrow testified that five of the ten mules were injured. Two of the mules were skinned over the eyes and one had a cut on the hock and the other on the hip; their legs, knees and eyes were swollen; "their eyes, legs and head just all out of shape." Eight of the stock were bruised and maimed worse than the others, some of

these eight were so badly crippled that "they could not hardly move at all and some of them could not see." The eyes of one horse were swollen "as big as a drum." The stock arrived at East St. Louis in a different car from the one in which they were shipped. Plaintiffs were unable to sell two of the mules in East St. Louis but after a week or two they were in a condition to ship to New Orleans where they were sold at a sacrifice.

Defendant's evidence tends to show that the train in which the stock was shipped from Macon passed through Moberly, at which point it was broken up and the car switched, part of the train going east and part west; that the train was handled carefully and in the usual manner between Macon and Moberly. There was no testimony as to what happened to the car while it was being switched at Moberly. The defendant put on as a witness its conductor who had charge of the train from Moberly to Luther, a point in North St. Louis. He testified that the train was handled carefully between these points; that at St. Peters, which is twenty-three miles from Luther, he noticed a slat broken on the side of the car close to the bottom; that on examination it had the appearance of being recently broken and that it had evidently been kicked. At this place "the stock were chasing one another around, they seemed to be restless, kicking." None of the animals were down at that time. At Ferguson about six miles from Luther the conductor noticed two of the horses down in the car. He tried to get them up without success. He noticed that their limbs were skinned and one of them had a skinned place on its head. When he reached Luther he directed the yardmaster's attention to the horses that were down and told him that he had better unload them as they were in danger of being trampled to death. What action the yardmaster took, if any, is not shown. There is no testimony as to what happened to the animals between Luther and the National Stock Yards at East St. Louis.

The petition is based solely upon the alleged liability of defendant as an insurer, and pleads no negligence. Plaintiffs' instruction No. 1 told the jury that if the stock was delivered to the defendant in good condition and received in an injured condition, their verdict should be for the plaintiffs, "unless you further believe from the evidence that the said crippled and injured condition was due to the inherent nature of the stock or caused by their own inherent vices."

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given and that plaintiffs' instruction No. 1 is erroneous for the reason that plaintiffs failed to allege and prove negligence on the part of the defendant and failed in their instruction No. 1 to have the jury find any such negligence.

We think that plaintiff proved negligence. The rule is well settled in this State that—

". . . if the wounded condition of the animal suggests the injuries were received from external violence, during the transportation, and evinces a physical condition which does not usually attend carriage with due care, such will suffice to repel the presumption pertaining to proper vice and cast the burden upon the carrier." [Cunningham v. Wabash Railroad, 167 Mo. App. 273, 282, 283; Cash v. Railroad, 81 Mo. App. 109; Blair Horse & Mule Co. v. Railroad, 180 S. W. 412; Robinson v. Bush, 200 S. W. 757; Moran v. C. B. & Q. Rd. Co., 255 S. W. 331.] It must not be lost sight of 'that if the defendant's negligence mingled with the inherent infirmity of the animals and proximately co-operated to cause their injury, the defendant is liable. [Moran v. Railroad, supra.]

Plaintiffs' evidence tends to show that the physical injuries inflicted upon the animals evidenced by their condition when they arrived at East St. Louis, were such as to justify the inference that they were maimed, bruised and crippled, not by the action of their own inherent infirmities but by the unskillful management of

the train, as the nature of their injuries evinces a physical condition which does not usually attend a carriage with due care. This evidence gives rise to an inference of fact and not merely a presumption of law. It is not usual for livestock to be found in this condition after being on the road for such a short period of time. Assuming that the defendant introduced evidence tending to prove the injury was caused solely by the inherent infirmity or vice of the livestock, although no account was given as to what happened to the stock in the switchyards at Moberly nor between Luther and the National Stock Yards, this merely raised a conflict in the testimony which was for the jury and not for this court to decide. [Cash v. Railroad, supra, l. c. 115; Blair Horse & Mule Co. v. Railroad, supra.]

There was a provision of the contract requiring the plaintiffs to notify the carrier in writing of any visible or manifest injury to the animals before they were removed from the possession of the carrier and mingled with other livestock. No such notice was given by plaintiffs and this is urged by the defendant as defeating plaintiffs' right of recovery. In support of this defendant cites cases that arose under provisions of contracts of shipment requiring claims for loss to be made to the carrier within a specified time. Since the decisions in the cases cited, Congress has passed an act making it unlawful for carriers to provide a shorter period for notice of claims than ninety days, for the filing of claims than four months and for the institution of suits within two years. [See 41 U. S. Statutes at Large, p. 494.] Plaintiffs contend that this provision of the contract in the case at bar is a mere attempt to evade this law. However that may be, we think that the notice was dispensed with. Here, the defendant was the first one to discover the injury to the animals. They were unloaded and the shipment prematurely ended without any notice to plaintiffs. Defendant's evidence shows that its veterinary made an examination of these animals

early in the morning of March 27th in East St. Louis and it was apparently upon the report of this veterinary that the connecting carrier's agent refused to accept the stock for shipment beyond East St. Louis. Although the veterinary testified that he made no such recommendation in his report, his testimony does show that it was the custom for the agent to accept his report and recommendations in regard to the matter. The carrier unloaded the animals and knew of the damage to the animals as soon as the plaintiffs knew of it, if not before, and there was no occasion for the giving of the notice required of the shipper mentioned in the contract. Under such circumstances this provision of the contract was inoperative. [M. K. & T. Rd. v. Frogley (Kans.), 89 Pac. 903, 904.]

It has been held that in construing provisions requiring notice of *claims* the fact that the carrier knew of the loss did not excuse the shipper in failing to inform the carrier of the loss and claim in writing as required by the contract. However, this holding is based upon the theory that the purpose of the notice is to give the carrier an opportunity to investigate the claim so that it can contest or settle it, and the mere knowledge of the loss would not be notice to it that a claim would be filed. Whether a claim is to be filed is a matter within the mind and conscience of the shipper and the carrier would not know whether it would have to contest or settle the claim until the shipper imparted his intention to make it. Therefore it is held that it is not enough that the shipper notify the carrier that the shipment was damaged but, further, that he intends to make a claim for the damages. [See Cudahy Packing Co. v. Atchison, etc., Railroad, 201 S. W. 623, 625.] The stipulation in the contract in the case at bar does not require any notice of *claim for loss* but merely that notice of the injury to the stock be given, and there is no reason why this provision should be operative when the carrier unloaded the stock and knew as much or more

about the injury than did the shipper, and its knowledge was obtained before that of the shipper, and the shipper was not present when the stock was unloaded and the shipment prematurely ended.

Plaintiffs failed to prove in a proper way plaintiffs' damages and their instruction No. 2, telling the jury, in effect, that the measure of damages was the difference between the market value of the animals immediately before their injury and at the time they were delivered to plaintiffs at East St. Louis, was erroneous. Over the objection of the defendant, the court improperly permitted plaintiffs to testify as to the reasonable market value of the stock before their injury (10 C. J., p. 386), which could mean nothing other, if anything, than their market value at Macon at the time they were shipped. There was no evidence to base a proper instruction on the measure of damages.

The general rule by which damages such as these are to be arrived at is that where the shipment is injured through a cause for which the carrier is responsible, the shipper is entitled to recover the difference between the value of the shipment at destination in its damaged state and what its value would have been if uninjured. [Matney v. Chicago, R. I. & P. Railroad, 75 Mo. App. 233; Pipe Co. v. Railroad, 137 Mo. App. 479.] Here the stock, except the two mules, never reached its destination, the connecting carrier refusing to take it any further than East St. Louis. This situation was brought about by the negligence of the defendant, at least there is evidence of such, in the transportation of the stock from Macon to East St. Louis. Under these circumstances the measure of damages, except as to the two mules finally shipped to New Orleans, was the difference between their value at the time and place where they should have been delivered, to-wit, New Orleans, and their reasonable market value in East St. Louis, where the enforced sale occurred, at the time they were sold there, less the unpaid freight, if any. [St. Louis, S. F. & T. Railroad v. Adams (Tex.), 118 S. W. 1155.]

As to the two mules that were not sold in East St. Louis but were kept there for several weeks in an effort to restore them to good condition and later shipped to New Orleans and sold, the measure of damages is the difference between their market value at New Orleans at the time they should have been delivered and their value when they arrived there plus the cost of restoring the mules and expense of reshipment to New Orleans, less any unpaid freight. [Gilwee v. Brewing Co., 195 Mo. App. 487, 490; 17 C. J., p. 879; 10 C. J., pp. 313, 401.] Plaintiffs ask in their petition for other damages than these and which other damages are not recoverable.

As before stated, the petition is based solely upon the common-law liability of defendant. The answer alleges that the shipment was made under a livestock contract and pleaded as a defense provisions contained in the shipping contract as follows:

"(a)   Except in the case of its negligence proximately contributing thereto, no carrier or party in possession of all or any of the livestock herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensity of the animal, or the act or default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor or threatened violence.

"(b)   Unless caused by the negligence of the carrier or its employees, no carrier shall be liable for or on account of any injury or death sustained by said livestock occasioned by any of the following causes: Overloading, crowding one upon another, escaping from cars, pens or vessels, kicking or goring or otherwise injuring themselves or each other, suffocation, fright, or fire caused by the shipper or the shipper's agent, heat or cold, changes in weather or delay caused by stress of weather or damage to or obstruction of track or other causes beyond the carrier's control."

It also pleads a provision of the contract requiring the shipper to furnish bedding. It alleges that the injury to the stock was caused by the inherent vice and weakness of the animals, the default of the shipper to properly bed the car and in overloading it and by the overloading and crowding of the animals one upon the other, by kicking, goring and otherwise injuring themselves and each other. There was some evidence on the part of the defendant that the stock were injured by reason of their own vicious propensities and there is an inference from defendant's evidence that the car was overloaded. Plaintiffs in support of their case introduced the shipping contract containing the provisions pleaded in the answer, together with several other provisions limiting the common-law liability of the defendant.

At common-law it is the duty of a carrier to bring a shipment safely through at all hazards save the act of God, the public enemy, or the inherent nature of the freight. [Singer v. American Express Co., 203 Mo. App. 158, 161.] Of course, the inherent nature of the freight includes the natural propensities, infirmities and vices of livestock. It will thus be seen that at common-law the carrier is liable for loss occasioned by other than its negligence or that of its servants and agents. It is also liable for damages growing out of many other causes, such as fire, robbery or accident which might not be attributable to the negligence of the carrier, except, of course, loss by the act of God, the public enemy, or the inherent nature of the freight [Singer v. American Express Co., supra, l. c. 162; O. S. L. Ry. v. Blyth, 19 Wy. 410, 419.]

This being an interstate shipment, the rights and liabilities of the parties depend upon acts of Congress, the contract between the parties and common-law principles accepted and applied in the Federal courts. [Johnson v. Mo. Pac. Ry. Co., 211 Mo. App. 564; Clemons Produce Co. v. D. & R. G. Railroad, 219 S. W. 660, 662.] It is

held that the rigor of the common-law rule against the carrier may be modified by special contract fairly made and entered into understandingly, and which is reasonable. [A. T. & S. F. Railroad v. Live Stock Co., 273 Fed. 130, 134; O. S. L. Ry. Co. v. Blyth, supra.] This is true even since the passage of the Carmack Amendment. [Singer v. Amer. Express Co., supra; A. T. & S. F. Railroad v. Live Stock Co., supra.] There is no contention in this case that the limitations contained in the live-stock contract are unreasonable. As before stated, plaintiffs introduced the livestock contract limiting defendant's common-law liability and are thus placed in the position of having declared on one cause of action, that is, an action based upon the common-law liability of the defendant, and proving another. In this respect this case differs from that of Hartford Fire Ins. Co. v. Payne, 243 S. W. 357. The shipment was not made upon a common-law contract but was made upon a special contract, the terms of which are binding upon plaintiffs. [Johnson v. Mo. Pac. Ry. Co., 187 S. W. 282.] . Plaintiffs having declared upon a common-law contract and having proved a special contract inconsistent with the common-law liability of defendant, there was a failure of proof of the cause of action alleged. It is well settled that plaintiff cannot declare upon one cause of action and recover upon another. [Henry County v. Citizens Bank, 208 Mo. 209; Gruwell v. Knights & Ladies of Security, 126 Mo. App. 496.] The demurrer to the evidence should have been sustained and plaintiffs' instruction No. 1 is erroneous.

The judgment is reversed and the cause remanded. All concur.