GEORGE B. COOLEY, RESPONDENT, v. WILBUR A. DAVIS, APPELLANT.*

Kansas City Court of Appeals. July 6, 1926.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, p 849, n. 49; p. 853, n. 59; p. 857, n. 93; p. 969, n. 56; Evidence, 22CJ, p. 197, n. 18; Husband and Wife, 30CJ, p. 1145, n. 53; Trial, 38Cyc, p. 1335, n. 37; p. 1543, n. 68; Witnesses, 40Cyc, p. 2770, n. 35.

*Harris & Price* and *Hunter & Chamier* for respondent.

*Franklin & Son, Mathews & Jones, McBaine & Clark* and *Paul M. Peterson* for appellant.

ARNOLD, J.—Action in damages for alleged alienation of the affections of plaintiff's wife by defendant.

The petition alleges that plaintiff and Della E. Cooley were married August 20, 1915, and that from that date until May 11. 1924, they lived together as husband and wife; that while plaintiff and his wife were so living together, defendant, being their family physician, took advantage of the confidential relations growing out of his said professional employment, and wrongfully, wickedly and maliciously, and with wrongful, malicious and wicked intent, caused the wife of said plaintiff to leave and abandon him; and by his wrongful, wicked and malicious acts and conduct, extending over a period of one or more years prior to May 11, 1924, defendant did completely alienate the affections of plaintiff's wife, and on said date, pursuant to his wrongful, wicked and malicious intent, did entice, influence and induce plaintiff's said wife to abandon him; and that his said wife, being so influenced and induced, did leave and abandon plaintiff and

has ever since remained away and separate and apart from him. Actual damages are asked in the sum of $20,000 and punitive damages in the sum of $5000.

The answer is a general denial.

Suit was instituted in the circuit court of Randolph county and was taken to Boone county on change of venue where it was tried, resulting in a verdict for plaintiff in the sum of $6000 actual damages, at the hands of the jury, and judgment therefor was entered accordingly.

Motions for a new trial and in arrest were unavailing and defendant appeals.

The facts of record are that plaintiff and Della E. Penrose were married at Butte, Montana, and that they lived in Montana for about two years and then went to Colorado; that plaintiff worked in a mine and also on ranches. In June, 1921, plaintiff and his wife went to Jacksonville, Randolph county, Mo., to live with and take care of the father of plaintiff, J. E. Cooley, who had been a paralytic for several years and who, shortly before, had lost his wife by death. It is shown that defendant was the family physician of J. E. Cooley and it was at his home where plaintiff and his wife were living in December, 1921, that plaintiff's wife first met defendant who was calling professionally on J. E. Cooley. In February, 1923, plaintiff's wife became ill and the defendant was called to attend her professionally. The evidence shows the defendant, a physician forty-one years of age, married and having a daughter eleven years of age, moved to Jacksonville in October, 1917; that he resided there and practiced his profession until May 16, 1924, when he moved to Macon, Macon county, Mo., being shortly after this suit was filed.

A few days after his first professional call on the wife of plaintiff and under his advice, she was sent to McCormick Hospital in Moberly, Mo., for an operation, and that an abdominal operation was there performed by Dr. F. L. McCormick. Mrs. Cooley remained at the hospital about sixteen days when she returned to Jacksonville. She needed medical attention because the incision received at the hospital failed to heal and was draining, and defendant was called to attend the necessary dressing thereof. This dressing of the incision consisted in removing the old gauze and replacing it with fresh gauze which was held in place with adhesive strips. For a time this dressing was done at the home of J. E. Cooley, but about the middle of March, 1923, defendant told plaintiff it would be cheaper if Mrs. Cooley would come to defendant's office for the treatments; in company with her husband, Mrs. Cooley then began going to the doctor's office for the treatments; but plaintiff, being at work, after a few visits, could not go to defendant's office with his wife. The wound continued to drain and it was necessary that the dressing be done

frequently. In the process of dressing, it was necessary for Mrs. Cooley to lie down and expose her person.

Mrs. Cooley, testifying for plaintiff, stated that after she had been going to defendant's office for about a month, defendant began to make improper advances toward her; talked about having a secret with her, put his arm around her; several times helped her off the table after the dressing; that at one time he put his arm around her and raised her up so that she could see the wound; told her that he loved her and could not bear to hear her husband call her "dear;" that he wanted her to leave her husband and tried every way to induce her to do so; that he wrote her notes which she destroyed so her husband would not see them; that this conduct on the part of defendant began about the middle of April, 1923, and at this time he was giving her tablets and capsules which he provided at his own office. Witness stated the incision ceased to drain in April but that defendant had her continue to visit his office every other day to be dressed until about the middle of May, 1923; that on one of the days on which she was not required to be at defendant's office, she met him on the street and he told her to come to his office that day between 11 and 12 o'clock and stated that his office girl was at lunch at that time. Witness testified that in May, 1923, when she was in defendant's office, he dressed her wound upon a sofa in the office and there illicit relations began between her and defendant and that these relations continued until May, 1924.

The witness testified that during the year from May, 1923, until May, 1924, she went to defendant's office frequently, and that he told her her husband need not know about it; that it would be a secret between the witness and defendant; that she cared for him—had learned to care for him; that after she began to care for defendant she did not care to be with her husband and told defendant she could not be happy with her husband; that at first she resented defendant's advances, but later learned to care for him and that she was in love with him; that the improper relations between them began about two or three weeks after such admissions; that during this year she went to defendant's office, sometimes every day, sometimes once a week, or once in two weeks, but if she remained away as much as a week, defendant would arrange to see her and would beg her to come to his office; that he also had her come to his barn on various occasions, where the improper relations were indulged.

Mrs. Cooley also testified that defendant urged her to find some excuse to leave Jacksonville; told her he would pay her expenses to Chicago to learn to be a nurse, and he would then locate somewhere and she could come to him and be with him; that he proposed to furnish her money with which she could return to her mother in Colorado. Along in May, 1924, Mrs. Cooley had some difference with her

father-in-law over some laundry; she told plaintiff about it and said she was going to leave on account of it and that she would not take care of his father any longer; that while plaintiff was in the field at work, Mrs. Cooley left on the train going to Moberly; that before leaving she went to defendant's office and showed him a telegram from her relatives at Salida, Colo., and told him she was going; that he said "You had better not go, there are rumors out now." She left Saturday, May 10, 1924, and went to Moberly where she stayed all night with plaintiff's niece, and the next day at 1:23 P. M. she left Moberly for Kansas City, Mo., where she arrived at 5:30 P. M. Witness stated her reason for leaving was that she cared more for defendant than for her husband; that the difference she had had with her father-in-law was trivial, a mere pretence; that she wanted an excuse and that was the only one she could find.

Witness testified that on her arrival at the Union station in Kansas City, a "red cap" called for Mrs. Cooley and when she responded, she was told to call Dr. Davis by telephone at Cairo, a small place in Randolph county, in the vicinity of Jacksonville; that she did call, as directed, and had a telephone conversation with defendant in which he begged her to return at his expense (which he did pay her) and that defendant said: "I have talked to George (plaintiff) and it will be all right for you to come and work for me." That she, at first, refused, but at last consented to meet defendant in Moberly. She did return that night, arriving at Moberly about 2:30 or 3:00 A. M. and defendant met her on the station platform; that he wanted to get a room, but, instead, they got into defendant's car and drove out in the country northeast from Moberly, returning to Moberly about 5:00 A. M.; that he let her out of his car several blocks from the station and she walked the rest of the way, taking a 6:00 train to Kansas City, where she changed trains for Salida, Colo., and arrived there a day late. Witness testified that on the ride out of Moberly on that night, defendant told her his office girl was going to quit and he wanted witness to work for him; that he said "I can't stand to have you go away and stay; will you promise you will come back?" That she said she would return in three or four weeks; that she did not intend to go back to Jacksonville but thought defendant would locate somewhere else and then send for her.

Defendant admitted that he telephoned to Mrs. Cooley from Cairo, Mo., where he had been called to see a patient, and that he asked her to return to Moberly; that he induced her to come because he promised her the job and that there was no other inducement held out to her. There was testimony on defendant's behalf that his wife was with him when he met Mrs. Cooley at Moberly. Mrs. Davis testified she was present with defendant on that occasion and there was other testimony corroborative of defendant that his wife was

with him, two other witnesses having testified that defendant and his wife were together on that occasion. Of course this testimony was contradictory of that which was given by Mrs. Cooley.

It appears that about June 7, 1924, plaintiff went to Salida, Colo., and there saw his wife in regard to the situation and that she confessed her intimacy with defendant; that he asked her at that time if she would be a witness for him if he brought suit against the doctor and she told him she would. Plaintiff testified that it was during this conversation with his wife that she first learned defendant had told plaintiff of the meeting of defendant and Mrs. Cooley in Moberly; and this displeased her because defendant had promised her he would not tell plaintiff.

Within a few days after the institution of this suit defendant went to Salida, Colo., and sought a private interview with Mrs. Cooley, but without success. Defendant admits he made this trip and that it was on the advice of counsel; that he thought the suit was a frame up ''and wanted to see how many were in the bunch, and whether plaintiff and Mrs. Cooley were together in the deal;'' that he did not know if Mrs. Cooley would be against him until he talked with her.

Statements of Mrs. Cooley as to her frequent visits to defendant's office were corroborated by other witnesses. The evidence in behalf of defendant was contradictory of that of plaintiff on practically all material matters. Defendant testified that plaintiff came to his office in Macon and endeavored to make him pay $5000 and settle the case out of court; but this was denied by plaintiff. Defendant denied ever having had improper relations with plaintiff's wife.

In support of this appeal, it is charged, first, that the court erred in refusing defendant's peremptory instruction in the nature of a demurrer at the close of plaintiff's evidence. It is the rule that in the consideration of a demurrer, plaintiff's evidence must be accepted as true and he is entitled to all reasonable inferences to be drawn therefrom. [King v. Railroad (Mo.), 263 S. W. 828, and cases there cited.] It is charged that the court erred in refusing to direct a verdict for defendant at the close of all the evidence, for the reason that the testimony of plaintiff's wife, was so improbable and so opposed to human experience that it did not constitute evidence to support a verdict.

In consideration of this charge, we need only refer to the testimony of the witness as outlined herein in the statement of facts. We feel it unnecessary to go into minute detail in regard to the testimony of this witness; if it be found that her testimony is, in fact, so improbable and so opposed to human experience that it does not constitute evidence to support a verdict, it is our duty to so declare. [Robinson v. Musser, 78 Mo. 153; Williams v. Collins, 180 Mo. App. 146; Burkett v. Gerth, 253 S. W. 199.]

Under the Session Acts of Missouri, 1921, p. 392, a wife is made a qualified witness in cases of this sort; but it has been held that it is the duty of the reviewing court to analyze closely her testimony to discover any collusion or connivance between the husband and wife. [Rea v. Tucker, 51 Ill. 110, 99 Am. Dec. 539.] We have done this, and applying the now well-established rule that where there is sub- stantial proof to sustain the verdict, we may not interfere with the verdict and judgment, in the absence of reversible error in the trial of the cause.

Mrs. Cooley's testimony is positive and to the effect that defend- ant expressed his love for her by both words and actions; besought her to visit his office in the absence of his office assistant; in words tried to induce her to leave her husband and go to Colorado with her mother, whence she was to come to him after he shall have left Jack- sonville; and after he had so left Jacksonville and moved to Macon, sent her a card giving his new address. When on her way to Colorado, he had her return from Kansas City in an endeavor to have her work for him; that he at all times made advances to her and that he finally won her love and caused her no longer to care for her husband, whom she finally left by reason of all these things. There is in the record corroborating testimony of other witnesses for plaintiff to the effect that Mrs. Cooley made frequent and, at times, daily visits to defendant's office, as testified to by her. This being a suit for alienation, we must hold the evidence was sufficiently substantial to support a verdict, and there was no error in refusing defendant's peremptory instruction at the close of the evidence. [See cases cited, supra.]

The only remaining point in support of this appeal presented for our consideration is the charge that the court erred in holding that Dr. F. L. McCormick was disqualified from testifying as to the na- ture and extent of the incision made in the operation performed by him on Della H. Cooley because the same was privileged, under the provisions of section 5418, Revised Statutes 1919. It is urged by defendant that the privilege defined in said section had been waived by the witness and that appellant had the right to require Dr. Mc- Cormick to describe the wound made in the operation. Mrs. Cooley, by reason of her relation to the plaintiff was the principal witness in the case, and during her examination in chief, the following oc- curred:

"Q. What was the matter in February, 1923, that required his attention as a physician? A. I took sick and called him and he said I was pregnant, and for some reason or other it was not doing just right, and he told George I would either become blind or par- alyzed if something wasn't done. We let it go a few days and then

called him back and I was not better, and he told me to go to McCor- mick Hospital in Moberly, which I did, and there I was operated on.

"Q. How long were you in the hospital? A. Sixteen days.

"Q. Then where did you go? A. Back to Jacksonville.

"Q. State whether or not your condition, after you went back to Jacksonville, required the attention of the doctor? A. It did.

"Q. What was the trouble? A. The incision was draining.

"Q. This was what kind of an incision? A. Abdominal incision.

"Q. Just about where was this, with reference to the navel? A. From the navel on down to the privates.

"Q. Did it extend into the hairs there? A. Yes, sir.

"Q. About how long was it? A. Well, I don't know just how long it was."

. . . . . .

"Q. And how would he do with reference to the wound? A. He would dress it, take the gauze off and put medicine on that would be required, and redress it.

"Q. In redressing it, what would he do? A. He would lay the gauze on and strap it.

"Q. With adhesive tape? A. Yes, sir.

"Q. That tape was for what purpose. A. To hold it in place.

"Q. Would it be necessary for you to expose yourself, or not, in order for him to do that? A. Yes, sir."

It is urged that the purpose of eliciting this testimony was to es- tablish in the minds of the jury that it was necessary for the witness to submit her person to the observation and care of her physician, the defendant; that defendant violated the confidence reposed in him by reason of his professional relation and took unprofessional advantage of the opportunity to make advances which, under ordinary circum- stances, would not have been probable; that any testimony tending to contradict Mrs. Cooley in this regard was admissible as going to her credibility. Defendant sought to prove by Dr. McCormick that the incision was not of the length testified to by Mrs. Cooley, and that in so testifying, she waived the right to claim privilege under the statute. Dr. McCormick was asked:

"Q. Tell the jury if, in 1923, Mrs. Cooley was a patient in your hospital in Moberly, Missouri? A. She was.

"Q. Was she under your immediate charge? A. She was.

"Q. Did you look her over and make an examination? A. I did.

"MR. CHAMIER: We object to the testimony of this witness. It now appears that he was her doctor or surgeon, and under the stat- ute he is disqualified to testify to anything that he acquired by reason of their confidential relationship.

"Mr. Franklin: They brought it out themselves, continually and very minutely, that she was a patient there and was operated on, and the nature and extent of the wound. They waived their—

Mr. Chamier: In answer to that, we say, Your Honor, that we may have waived whatever Dr. Davis, the defendant, did with reference to his treatment of her, but we absolutely did not go into anything that occurred between her and Dr. McCormick as her doctor or surgeon. All the evidence in this record is that an operation was performed, but that isn't sufficient to make a waiver.

"The Court: I think that is true. Objection sustained; that is, if what you are trying to elicit was information obtained by him in the relation of physician and patient.

"To which ruling of the court the defendant, by his counsel, then and there at the time duly excepted and saved his exceptions.

"Mr. Matthews: I want to make an offer.

"Mr. Matthews (in low tones at reporter's table): We offer to prove by this witness that the wound on Mrs. Cooley that she testified to was a wound received by her from Dr. McCormick and the wound was made, not of the length that she testified—from the navel to the hair on the vulva—but it was a much shorter wound and was a wound which was necessary to be made for an operation for removing infected ovaries, and the wound was such as would be made in an operation for removing an infected ovary; that in dressing it the privates would not be seen in dressing the wound, or handled in any way.

"Mr. Chamier: We object to the testimony for the reason that the witness was the surgeon and doctor of plaintiff's wife, and whatever information he received by virtue of that relationship is not competent evidence to be given by him. He is disqualified under the statute, to testify to it, and we object for that reason.

"The Court: Objection sustained."

(Defendant saved his exceptions.)

It is urged that Mrs. Cooley waived her privileged rights under the statute by testifying to the length of the incision. Plaintiff counters by saying that there was no waiver because Mrs. Cooley's testimony in this regard was elicited only through preliminary question and that the length of the incision was not material under the allegations of the petition, the suit being for alienation and not for rape, and therefore any evidence as to the nature of the operation performed by Dr. McCormick and the length of the incision made by him was not material to the issues presented by the pleadings. It is the undisputed rule that error may not be predicated upon the admission of immaterial evidence. [22 C. J. 197; State v. Long, 257 Mo. 199.]

It will be seen the result of this appeal will depend upon whether or not the evidence offered was in fact material, and in this we agree with plaintiff that it was not. A careful examination of the recorded evidence of Mrs. Cooley fails to show that the length of the incision made by Dr. McCormick had any direct bearing on the issues in the case. The witness did not testify that the proximity of the lower end of the incision afforded defendant any closer access to her private parts of which he took any advantage by manipulation or otherwise, in furtherance of his alleged efforts towards alienating her affections from her husband. Had there been such testimony, it might have furnished a basis for defendant's contention; but no such evidence being in the record, we need not decide that point here.

Reverting to defendant's offer, it is noted that it was proposed to show by Dr. McCormick, that the incision was not of the length testified to by Mrs. Cooley, but was much shorter; and was such a wound "necessary to be made for an operation for removing infected ovaries and the wound was such as would be made in an operation for removing an infected ovary. . . ."

There was nothing in the pleadings, nor in the testimony of Mrs. Cooley, tending to show that there was an operation for an infected ovary, or infected ovaries. It is the established rule that where evidence is offered as a whole and part thereof is inadmissible, the whole may properly be rejected by the court. [Howard v. Shoe Co., 62 Mo. App. 405; McGrew v. Railroad, 109 Mo. 582, 38 Cyc. 1335.] Defendant insists that the testimony offered was admissible for its bearing on the credibility of Mrs. Cooley, but as we have already ruled that the evidence offered was immaterial, it could not properly be admitted for any purpose. [See cases last above cited.]

We fail to find reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.