METALS REFINING COMPANY, A CORPORATION, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, A CORPORATION, APPELLANT.—137 S. W. (2d) 977.

Kansas City Court of Appeals.   January 29, 1940.

*Gossett, Ellis, Dietrich & Tyler* for respondent.

992

*J. W. Jamison, Henderson & Deacy* and *Thos. E. Deacy* for appel-
lant.

SPERRY, C.—Metals Refining Company, plaintiff below, sued St. Louis-San Francisco Railway Company, who was defendant. We will refer to the parties in that order in this court. Plaintiff took an involuntary non-suit and moved to set the same aside. From the order of the court sustaining said motion defendant has appealed.

Plaintiff's statement, originally filed in a justice of the peace court and never amended, alleged the following:

"That heretofore to-wit, and on or about the 2nd day of November, 1923, the defendant did accept a carload of antimonial lead weighing 61,021 pounds or 755 pigs at Kansas City, Missouri, *agreeing to deliver same to the plaintiff at Hammond, Indiana, and did issue therefor an order bill of lading describing said shipment as aforesaid, which was sent with sight draft attached and relying thereon the plaintiff herein did pay for said shipment;* that thereafter and when said shipment was delivered at Hammond, Indiana, to the plaintiff by the defendant, its agents and vice principals, same was short, 8,097 pounds or 90 pigs of lead; that said shortage and loss occurred while said shipment was in the charge and under the control of this defendant, its agents and vice principals and after it had issued its order bill of lading as aforesaid and that thereby the defendant became bound and obligated to pay this plaintiff for the value of said antimonial lead which was short as aforesaid; that the fair and reasonable value of said lead at said time was 6.01 cents per pound, or total of $493.92; that all of said sum has been duly demanded of the defendant and payment therefor has been refused." (Italics ours.)

The evidence disclosed that Midwest Metals Company, of Kansas City, hereafter called consignor, notified defendant that it desired to ship a carload of lead and defendant set out a car for it; that 61021 pounds of lead was loaded into a car on defendant's switch track, the car was duly sealed and defendant was notified that it was ready for movement; that consignor made out a bill of lading on the Chicago & Alton Railroad Company; that defendant moved the car to the yards of the Chicago & Alton Railroad Company for transportation to plaintiff, but when said car was received by the Chicago & Alton Railroad one of the seals had been broken; that the Chicago & Alton Railroad Company promptly weighed the car and its weight was some 8000 pounds less than it was when it was first sealed; that when originally loaded it contained 755 pigs of lead weighing 61021 pounds and when received by plaintiff it contained 665 pigs, and there was a shortage of about 8000 pounds of lead, or of the value sued for. The bill of lading together with a sight draft for the amount of the value of the lead attached, was forwarded to plaintiff who paid the draft, took up the bill of lading and accepted the lead. Plaintiff thereafter discovered the shortage and brought this suit for recovery. Defendant's switch tracks were the only tracks that served Midwest Metal Company's warehouse, and were exclusively the property of defendant. The bill of lading was in evidence and was produced from the files of defendant. It is defendant's contention that one may recover for loss of goods delivered to a common carrier for shipment on either of two different theories, to-wit:

(a)   Action based on the contract of affreightment;

(b)   Action based on tort for breach of the common law duty of a common carrier to safely deliver goods received by it for transportation.

While there are theories, other than the above mentioned, under which a common carrier might be held liable for loss of goods delivered to it for transportation, for the purpose of this case we need not consider such other theories.  [Merritt Creamery Co. v. Atchison, Topeka & Santa Fe Ry. Co., 128 Mo. App. 420.]

Assuming, for the purpose of discussion here, that plaintiff in this case might have elected to pursue either of the above theories, yet if it elected to pursue one of such theories, as disclosed by its pleadings, and fails to make a case under the theory pleaded and tried, it will not be permitted to recover on the other.  [Wernick v. St. L. & S. F. R. R. Co., 131 Mo. App. 37, l. c. 42; State ex rel. Massman Const. Co. v. Shain et al., 130 S. W. (2d) 491, l. c. 495.]

Defendant contends that plaintiff pleaded, and relied thereon in the trial court, a cause in contract, based on a bill of lading.  If the statement herein does plead such an action, then plaintiff, by its own evidence, disproved such a contract.  The bill of lading issued in this transaction was not drawn or prepared by agents of defendant, but by agents of consignor.  The bill of lading was not issued by defendant, but by the Chicago & Alton Railroad Company, and was so issued at the special instance and request of consignor.  It cannot recover in contract.

We think the statement filed herein does not state a cause *ex contractu* but does state one *ex delicto*.  We are inclined to this view because of the reasoning set forth in Wernick v. Railroad, *supra*; and we are also cognizant of the liberal rule of construction applied to pleadings filed in justice courts, as distinguished from that obtaining in respect to pleadings originating in circuit courts.  [Walton v. Carlisle, 313 Mo. 268, l. c. 279, 280.]  Measured by the above rule as declared by the Supreme Court we think the petition stated a cause *ex delicto*.

If the statement is ambiguous, no attack was made on it in the lower court; and if it intermingles and confuses two separate theories, or was misleading to defendant, the latter did not demand that it be made more specific, or that plaintiff elect upon which theory it would proceed.  If plaintiff attempted to state a cause of action on a written contract it is imperfectly stated; but it did state a cause *ex delicto,* and reference therein to the bill of lading may be considered surplusage because the issuance of a bill of lading was not a prerequisite to the attaching of liability to a common carrier for the safe delivery of goods delivered to it for transportation.  It is alleged that the lead was delivered to defendant as a common carrier, for transportation, *and was lost by defendant while in its custody.* Issuance of a bill of lading is *prima facie* proof of delivery of the

goods; but proof of delivery may be made although no bill of lading is issued. [13 C. J. Secundum, 288, section 145e; 1 Michie on Carriers, section 407, page 291; Morrison Grain Company v. Missouri Pacific, 182 Mo. App. 339, l. c. 346, 347.]

This case was before us on another occasion and we handed down an opinion in favor of plaintiff on the grounds herein set out. Thereafter, and in due time, defendant filed motion for rehearing wherein the question of the right of plaintiff, to maintain the suit, was obliquely raised, the intimation being that consignee cannot sue for goods lost except the cause of action be transferred to him by assignment of a bill of lading. If such be the law it is difficult to conceive a case where the consignor could recover against a carrier in a case where goods were shipped and no bill of lading was issued; yet, in such case, the consignor might have no interest whatever in the goods and, hence, no right to recover. Such point was not raised in the original brief; and no authorities in support thereof were cited in defendant's motion for rehearing or in its supplemental brief thereafter filed. We think that defendant has abandoned the point. However, we have read and considered the authorities cited by plaintiff.

13 C. J. Secundum, section 248e, states the rule to be as follows:

"Where the consignee is the actual owner of the goods he may sue for loss of or injury thereto, and some authorities hold that he is the sole party entitled to use, although the contract was made with the consignor.

"Where the consignee is the actual owner of the goods he may, of course, maintain an action against the carrier for their loss or injury, whether or not he has paid for the goods. So, when the consignor releases all claim to goods lost in transit, the consignee is the proper party to sue for the loss. . . .

"Although as stated *supra* . . . the weight of authority is to the effect that the shipper, who makes the contract of shipment, is entitled to sue thereon for loss or injury to the goods, irrespective of the question of ownership, there are nevertheless some cases in which the right of the shippers to sue by virtue of the contract is ignored, and the consignee is held the only party entitled to sue, where the entire property in the consignment is vested in him. Here even the consignor's right of stoppage in transit is not considered as affecting the question of parties, and the consignor, in making the contract of affreightment, is deemed merely an agent of the consignee, although the latter may be a stranger to the carrier."

The Supreme Court, in Kirkpatrick v. Kansas City, St. J. & C. B. Ry. Co., 86 Mo. 341, considered a case where a car load of wheat screenings was sold by one Goodell, at Winthrop, Missouri, to one Slaughter, on March 25th. According to instructions given by Slaughter the screenings were shipped to plaintiffs with whom Slaughter had made arrangements to honor draft in payment therefore, which

plaintiff did. On March 29th, the screenings were totally destroyed while en route from Goodell to plaintiffs. Slaughter and plaintiffs were unaware of said destruction and, some three weeks thereafter, Slaughter sold the non-existent screenings to plaintiffs, agreeing to deliver same on agreed terms. After learning of the destruction of the screenings plaintiffs paid Slaughter in full therefor and sued the carrier. The court held that plaintiffs were the real party in interest under the code, and, l. c. 347, that:

"The fact that the screenings were destroyed *prior to their absolute sale* to plaintiffs does not affect the proper conclusion to be reached. The property of Slaughter in the screenings still continued and was the subject of transfer to plaintiffs, and they could maintain this action on the ground of the transfer, if upon no other." (Italics ours.)

This court said, Burriss & Haynie v. Missouri Pacific Ry. Co., 105 Mo. App. 659, l. c. 663:

"And it may be stated generally that if goods are delivered to the carrier on behalf of the consignee and at his request or by his direction, either express or implied, and no other fact appears, the legal presumption will be that the property right in the goods immediately upon such delivery became vested in him and that he is the proper party to bring an action against the carrier either in *assumpsit* in his own name upon the contract with the consignor as his agent or in a case for breach of duty on the part of the carrier, or in the name of the agent for his use upon the special contract of affreightment. [Hutchinson on Carriers, sec. 734, and cases cited.]"

We think the better rule on the question of the right of consignee to maintain suit, is stated in 9 American Jurisprudence 935, par. 825, where it is said that there is an apparent conflict of authority on the subject, and that, in most cases, the courts had upheld the right of either the consignee or consignor to sue, depending upon which had brought the suit; that any apparent conflict of authority is due to the fact that the courts have considered the matter from the standpoint of the relations existing between the shipper and the consignee, in reference to the ownership of the property, instead of considering the true question of the relation the carrier sustains to each of these parties respectively and states:

"Any difference or diversity of interest that may arise between the consignor and consignee can in no respect concern the carrier so long as it is protected against responding for the property more than once. The ownership may be general and unqualified, or special and limited; the right of possession may be absolute or contingent; or there may be a special contract for the transportation of the goods; in any one of these instances the interest would be sufficient on which to found an action in the absence of the assertion of a superior right in another. The true premise on which to base any inquiry as to

the proper party plaintiff is, therefore, in the absence of statutory regulation, that both the consignor and the consignee may have an interest in the goods or their safe transportation in which event either may sue; but the success of the demand and claim of one apparently entitled to possession as against the carrier will relieve the carrier from further responsibility, even to one having a better right. Furthermore, under statutes existing in many jurisdictions, if there is any question or doubt as to the party to whom the carrier is liable, all necessary parties may be brought in and required to set up their interests, and thereby determine the respective rights and effectually protect the defendant from the possibility of the assertion of further claim by other parties.''

In view of the above authorities, and of the undisputed facts in evidence, we hold that plaintiff was the real party in interest, as contemplated by our statute, the consignor having been paid in full for the property; and that plaintiff was entitled to maintain this action notwithstanding the total absence of an assigned bill of lading.

The judgment setting aside the non suit is affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of Sperry, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.