L. L. VAUGHN v. WABASH RAILROAD COMPANY.—188 S. W. (2d) 352.

Kansas City Court of Appeals. May 21, 1945.

*E. M. Jayne* for appellant.

*M. D. Campbell* and *S. H. Ellison* for respondent.

342

CAVE, J.—This is an action to recover damages for loss sustained by plaintiff to six car loads of cattle in transit from Kansas City, Missouri, to Greentop, Missouri. Verdict and judgment were for plaintiff for $1800. Defendant appealed.

The petition is founded upon the theory of the carrier's common-law liability as an insurer; neither specific negligence nor written contract is pleaded. The cause of action alleged is the failure of defendant to discharge its common-law obligation safely to deliver the property at its destination. [Creamery Co. v. Ry. Co., 128 Mo. App. 420.]

The answer is a general denial, coupled with an allegation that the shipment was made from the state of Texas and not from Kansas City, as alleged, and that certain other railroads handled the shipment under a contract to which the plaintiff was not a party; and that whatever damage suffered by the cattle was not the result of any negligence of defendant. The reply is a general denial, together with an allegation that the defendant knew the condition of the cattle at the time it received them at Kansas City, Missouri.

Defendant makes five assignments of error, but there are only two carried forward in points and authorities and argument, and all others will be considered abandoned. [Magers v. Northwestern Mut. Life Ins. Co. (Mo.), 152 S. W. (2d) 148, 149.]

Appellant states its first contention in this manner: ''The question in this case is not whether respondent was entitled to recover of appellant (defendant) for damages to his livestock. The question is whether respondent, when he was not a party to the shipping con-

tract, was entitled to the benefit of the rule of law that cast the burden of proof upon a carrier to absolve itself from any possible negligence. That rule of law exists and is enforced in actions against common carriers because the relationship of carrier and shipper or carrier and consignee exists."

The Missouri rule of a carrier's common-law liability, such as is pleaded in the petition, is clearly defined by this court in Hartford Fire Ins. Co. v. Payne, 243 S. W. 357, 359, and is stated thus:

"The cause of action is upon the carrier's common-law liability; and while the shipment is one of live animals, which forms one of the exceptions to the rule of the carrier's common-law liability as an insurer, yet proof of delivery to the carrier in good condition and of a delivery by the carrier in bad condition made a prima facie case for the plaintiff which cast the burden on the carrier to show that the loss or injury was caused by the animals' own vice or inherent infirmity and without fault on the part of the carrier, in which event the carrier would not be liable. . . . And this is true even in interstate cases. . . . And it is conceded that the shipper makes a prima facie case, even in the case of live animals, when he shows a delivery to the carrier in good condition and receipt at destination in bad condition." [See, also Boyd v. St. Louis Express Co., 211 S. W. 702; Sullivan v. American Ry. Express Co., 211 Mo. App. 123, and Vaughn v. St. Louis-San Francisco Ry. Co. et al., 15 S. W. (2d) 901.]

Therefore, the question for consideration is whether the plaintiff was such a shipper or consignee that he is entitled to the above rule of law. There appears to be no need of detailing the damage done to the cattle because the amount of the verdict is not criticised, nor claim made in the brief that the damages were due to the vices or infirmities of the animals.

With reference to the facts surrounding the shipment, the record discloses that the plaintiff, L. L. Vaughn, (sometimes referred to as Vaughn Company, or Vaughn and Company) resided at Greencastle, Missouri, and was extensively engaged in the cattle business; that Harry Conley (sometimes referred to as H. Conley and as Harry Conley and Company) resided in Kansas City, Missouri, and was extensively engaged in the cattle business; that Harry Conley (sometimes referred to as H. Conley and as Harry Conley and Company) resided in Kansas City, Missouri, and was extensively engaged in buying and selling stocker cattle. In April, 1943, Harry Conley bought 500 head of cattle from one J. H. Tigner of Hitchcock, Texas. By a Uniform Livestock Contract with the Gulf, Colorado and Santa Fe Railroad Company, Tigner shipped the cattle consigned to Harry Conley, with Bowling Green, Missouri, as the destination, with stopover privileges at the West Side Yards in Kansas City, Missouri, for feed and rest. The cattle arrived at Kansas City on Monday morning,

May 3, 1943. Conley, the owner, sold 42 head of them the next day to one Harry Peters and shipped them to him at Sheldon, Missouri. The remainder were sold to plaintiff on May 6 and paid for by him on that day. Some of these cattle were shipped to other points in Missouri and are not involved in this suit. After plaintiff purchased and paid for the cattle he arranged with Conley to ship 232 of them to him at Greentop, Missouri, with freight prepaid. Plaintiff left Kansas City and Conley arranged with defendant to transport the cattle to Greentop. Defendant issued its Uniform Livestock Contract wherein it agreed to transport said cattle and deliver the same to "Harry Conley, care of Vaughn Co., Greentop, Mo." Plaintiff knew nothing of this contract until he received the cattle and defendant's local agent delivered it to him. Defendant introduced the written contract as a part of its case.

It can be said that plaintiff's evidence proves that he became the owner of the cattle, by purchase, while they were located in the stockyards in Kansas City, Missouri, and that he arranged with Conley, the seller, to have the cattle shipped to him, freight prepaid; that Conley delivered them to defendant for such purpose; and that they were delivered to plaintiff with some dead and others greatly injured. This is in accordance with his petition. Conley had sold and conveyed all his interest in the cattle to plaintiff and was nothing more than his agent in arranging for the shipment by defendant. Under such circumstances, plaintiff was a proper party to bring the kind of suit he did bring. For a full discussion of this question we refer to Metals Refining Co. v. St. Louis-San Francisco R. Co., 137 S. W. (2d) 977, wherein this court discussed authorities of this and many other states and reached a conclusion which fully supports plaintiff. [See, also, Kirkpatrick et al., v. The K. C., St. J. & C. B. Ry. Co., 86 Mo. 341.]

Defendant cites the cases of Morrow v. Wabash R. Co., 219 Mo. App. 62, 265 S. W. 851, and Vaughn v. Q. O. & K. C. R. Co., 123 S. W. (2d) 569, and argues that plaintiff is in no position to claim any rights beyond the provisions of a certain written livestock shipping contract. Those cases are easily distinguished from the present one. In the Morrow case the petition was founded on common-law liability, as here, but the plaintiff introduced in evidence, as a part of his case, the written contract between the parties; and this court held that he had pleaded one cause of action and proved another and reversed and remanded the cause. The case was retried and plaintiff did not introduce the written contract, as a part of his case, but it was introduced by the defendant, and we held that under such circumstances the contract did not supersede defendant's common-law liability for negligence, but merely modified it. [See Morrow v. Wabash R. Co., 276 S. W. 1030.] In the present case the defendant did not plead the provisions of any written contract and does not point out in its brief any modification of the common-law liability contained in

the contract it introduced. The opinion in the Vaughn case, *supra,* is to be distinguished on the same grounds.

But defendant says that the plaintiff did introduce in evidence the contract of shipment from Texas to Bowling Green, which was a Uniform Livestock Contract issued by the Gulf, Chicago and Santa Fe Railroad Company, by which one Tigner of Texas had consigned 500 head of cattle to Harry Conley with Bowling Green, Missouri, as the destination, with the privilege of a stopover at the West Side Yards in Kansas City for feed and rest. This contract was introduced to show ownership in Conley. Plaintiff was not a party to it, claims no rights under it, and is not bound by it. It has no particular bearing on any arrangement between plaintiff and defendant for the shipment of these cattle from Kansas City to Greentop. The question of an interstate shipment is not properly preserved and presented in defendant's brief.

We conclude that under the pleadings and the evidence plaintiff was entitled to submit his case to the jury on the theory that the burden of proof was upon defendant to absolve itself of negligence.

Owing to the condition of the assignments and the brief the remaining point for consideration is appellant's contention that the court erroneously admitted Exhibit 3 over defendant's objection. Exhibit 3 was a bill rendererd by defendant's agent at Greentop, and paid by plaintiff, for feed and care at Moberly. The circumstances under which this exhibit was offered by plaintiff are these: Defendant's agent at Greentop testified that Vaughn did not pay him any money; that the freight was paid on the cattle; that he did not recall whether he was paid for feed, but if he had been there was a bill for it, and later testified that he did collect $12 from Vaughn for feeding the shipment at Moberly. Two of defendant's employees at Moberly also testified that the cattle had not been fed, and one of them said he did not think they had received water at Moberly.

When plaintiff offered the exhibit in evidence showing a receipt of the bill for $12.51 paid by L. L. Vaughn for feed and service furnished at Moberly, counsel for defendant said: "We object to it. It does not tend to prove any issue in the case; it is not proper rebuttal." Counsel for plaintiff proposed to state what it was, and counsel for defendant said: "It is cumulative. It has already been gone into in chief." Plaintiff's counsel stated that a charge had been made for feeding at Moberly and that defendant's witnesses swore they did not give the cattle any feed at Moberly. The point sought to be made by appellant is that the exhibit was not admissible because it merely tended to contradict immaterial testimony and was not admissible for the purpose of impeaching the credibility of defendant's witnesses offering such testimony. The rule of evidence contended for appears to be the law. [Cooley v. Davis, 221 Mo. App. 748, 286 S. W. 412.] It is noted, however, that when defendant's witness testified

that plaintiff did not pay him any money and afterwards testified that he did pay him for feed at Moberly, this evidence was received without objection; and it is further noted that when the exhibit was offered in evidence the only objection was that it did not tend to prove any issue in the case; that it was not proper rebuttal; and that it was cumulative. That is not the objection which appellant now urges on appeal. Respondent contends that such evidence was merely cumulative and if erroneously admitted, it was not reversibly erroneous. Exhibit 3 contained no information that was not already before the jury in the testimony of defendant's witness; its influence, if any, was negligible. Appellant does not contend that the verdict was excessive. In view of the evidence it was in fact moderate, and certainly does not reflect the judgment of an inflamed jury. The conclusion is that the introduction of Exhibit 3, in view of the circumstances under which it was offered in evidence and the objection made at the time, should not be held to be reversibly erroneous.

Appellant has not shown any trial error materially affecting the merits of the case. The judgment should be affirmed. It is so ordered. All concur.