W. E. CUNNINGHAM et al., Respondents, v. WABASH RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, July 19, 1912.   Motion for Rehearing Overruled October 15, 1912.

1. PLEADING: Demurrer to Petition: Waiver by Answering. Where a petition is sufficient, after verdict, to support the judgment, a demurrer thereto is waived by answering and going to trial after it is overruled.

2. COMMON CARRIERS: Injuries to Live Stock: Negligence: Burden of Proof. In an action against a carrier for injuries to live stock through the carrier's negligence, the burden of proving negligence rests on the plaintiff, since negligence is a positive wrong and will not be presumed.

3. ————: ————: ————: Sufficiency of Evidence. Evidence, in an action for injuries to live stock while being transported by a railroad company, that several times during the trip couplings were made with such severe and unusual force as to severely shock persons riding in the caboose and to knock down coal piled up in a corner of the caboose, makes a prima facie case of negligence, so as to present a question for the jury, since, while one may not recover for an injury caused by the ordinary jerk or jar of a freight train, the act of coupling cars with the force shown by the evidence was not of an ordinary or usual character.

167 Mo. App.—18

Cunningham v. Railroad.

4. ———: ———: ———: ———. In·an action against a carrier for injuries to live stock, where it appears that the animals were in good condition when delivered to the·carrier for transportation and were severely gashed and wounded upon reaching their destination, that their wounded condition indicated the injuries were received from external violence, and that their physical condition. was such as does not usually appear if transported with ordinary care, a prima facie case of negligence is established, and the burden is shifted to the carrier to relieve itself of the charge of negligence, since, while the shipper must offer some proof that the injury was not received as a result of proper vice of the animals or their companions in the car, this is sufficiently shown where their condition indicates· external violence.

5. ———: Carriage of Live Stock: Liability of Carrier. As to inanimate freight, a carrier is an insurer against all perils excepting only the act of God, the public enemy, and the negligence of the shipper; but as to live stock, there is to be also excepted the proper vice of the animal.

6. RAILROADS: Authority of Agent: Principal and Agent. An agent of a railroad company, in charge of both its freight and ticket office and conducting its business in both departments at a particular place, has apparent authority to accept a check in payment of freight charges, and any limitations on this apparent authority will not affect persons dealing with him without knowledge thereof.

7. COMMON CARRIERS: Injuries to Live Stock: Detention of Stock: Tender. In an action against a carrier for injuries to live stock from exposure due to a mistake of the carrier's agent as to the amount of freight and his refusal to permit the animals to be taken from the railroad stock pens until the freight was paid, the fact that the shipper offered a check in payment of the freight and made no tender of the money did not relieve the carrier from liability, where it appeared that, if the money had been tendered, it would have been refused, and that, even after the agent agreed to accept a check, he refused to accept one for the actual amount of freight due and demanded one for a larger amount.

8. TENDER: Waiver of Production of Money. The production of money may be waived by the person to whom it is due by his refusal to accept the sum actually due, and such refusal makes the proffer to pay as good as though the money were counted down.

Appeal from Audrain Circuit Court.— *Hon. James D. Barnett,* Judge.

· AFFIRMED.

*N. S. Brown* and *Robertson & Robertson* for appellant.

(1)  The petition improperly joins a cause of action *ex contractu* and a cause of action *ex delicto,* and the court erred in overruling defendant's demurrer, defendant's objection to the introduction of any evidence, the motion for new trial, and motion in arrest of judgment, raising this objection.  Pipe Co. v. Railroad, 137 Mo. App. 479; Barnes v. Railroad, 119 Mo. App. 303; The Southworth Co. v. Lamb, 82 Mo. 242. (2)  The court erred in refusing to direct a verdict for the defendant at the close of the evidence for the plaintiff, and also in refusing to direct a verdict for the defendant at the close of all the evidence.  (A) Under the evidence there could be no recovery for any bodily injuries received by any of the horses for the reason that there was no negligence in the operation of the train.  Fruit & Nut Co. v. Railroad, 143 S. W. 839; Lay v. Railroad, 138 S. W. 884; Cornett v. Railroad, 138 S. W. 51.  The evidence of jerks of the freight train is no evidence of negligence.  Hedrick v. Railway, 195 Mo. 104; Wait v. Railway, 165 Mo. 612; Howell v. Railway, 149 Mo. App. 629; Saxton v. Railway, 98 Mo. App. 494; Guffey v. Railway, 53 Mo. App. 469.  (B)  There could be no recovery by reason of any of the horses having colds or pneumonia or dying therefrom.  The plaintiffs made no legal tender of the freight charges and were unable to make any legal tender, and were therefore not entitled to delivery of the horses.  28 Am. & Eng. Ency. Law (2 Ed.), pp. 5, 7; 38 Cyc. 142, 143; Leek Milling Co. v. Langford, 81 Miss. 728; Eddy v. Davis, 116 N. Y. 251; Brown v. Binz, 50 S. W. 483; Lilienthal v. McCormick, 117 Fed. 89.  The agent could not waive the legal tender because such waiver was not for the benefit of the prin-

cipal and the rule of the defendant prohibited the taking of anything except legal tender in payment of freight. 1 Am. & Eng. Ency. Law (2 Ed.), 1028, 1029; 31 Cyc. 1376, 1378; Buckwalter v. Craig, 55 Mo. 71; Gowling v. Express Co., 102 Mo. App. 371; Ward v. Smith, 7 Wall. 452. The evidence showed the holding of the horses in the pens after Cunningham first called at the freight office did not cause the colds and pneumonia. That this was caused by the heated condition of the horses when they were first unloaded. (3) The court erred in giving plaintiff's instruction No. 1. 1 Am. & Eng. Ency. Law (2 Ed.), 1028, 1029; 31 Cyc. 1376, 1378; Buckwalter v. Craig, 55 Mo. 71; Gowling v. Express Co., 102 Mo. App. 371; Ward v. Smith, 7 Wall. 452. (4) The court erred in giving plaintiffs' instruction No. 3. This instruction is contrary to evidence in submitting that "at or about the time of the arrival of said horses . . . the plaintiffs were ready and willing to receive them and to pay all legal freight charges against them;" also in submitting that "after defendant's agent refused, if you find he did refuse, to deliver said horses to plaintiffs and accept the legal freight charges." There was no tender of the charges, and no refusal. (5) The court erred in refusing defendant's modified instruction "B" as asked and in giving it in the modified form. Gowling v. Express Co., supra, and other authorities cited under point 2, B. (6) The court erred in refusing defendant's instruction No. 2. Authorities cited under point 2, B. (7) The court erred in refusing defendant's instruction No. 4. See authorities cited under point 2, B.

*E. S. Gantt* for respondent.

(1) The petition states a cause of action *ex delicto* and the court did not err in overruling the defendant's demurrer. Luke v. Railroad, 3 Mo. App. 77; Heil v. Railroad, 16 Mo. App. 363; Glascock v. Rail-

road, 86 Mo. App. 114; Rideout v. Railroad, 81 Wis. 237; Bowers v. Railroad, 107 N. C. 725; Wernick v. Railroad, 131 Mo. App. 37; 6 Cyc. 513; Brown v. Railroad, 135 Mo. App. 624; Clens v. Railroad, 119 Mo. App. 245. By pleading to the merits defendant waived all objection to the petition. Hof v. Railroad, 213 Mo. 445; Dodge v. Coal Co., 115 Mo. App. 501; Bannock v. Railroad, 200 Mo. 561; Hudson v. Cahoon, 193 Mo. 547; White v. Railroad, 202 Mo. 539. Defendant did not file motion to elect. Mooney v. Kennett, 19 Mo. 555; Childs v. Railroad, 117 Mo. 437; The Southworth Co. v. Lamb, 82 Mo. 242. (2) There was abundant evidence to entitle plaintiffs to go to the jury on the question of defendant's negligence in handling the car. Libby v. Railroad, 137 Mo. App. 280; Forest v. Lee, 138 Mo. App. 722; Green v. Railroad, 156 Mo. App. 263; Hurst v. Railroad, 117 Mo. App. 38; McFall v. Railroad, 117 Mo. App. 483; Griffin v. Railroad, 115 Mo. App. 552; Livery Co. v. Railroad, 105 Mo. App. 558; Cash v. Railroad, 81 Mo. App. 109; Hance v. Express Co., 48 Mo. App. 179; Witling v. Railroad, 101 Mo. 631; 6 Cyc. 381. The evidence of jerks of a freight train may not be evidence of negligence but evidence tending to show that a train was uncoupled and went in on a side track for a car and then came out on the main track and backed into the cars and caboose with such force that coal was knocked out of the box and scattered over the floor and persons in the caboose nearly knocked down is evidence of negligence. Of course, the defendant is not liable for jerks necessarily incident to the use of the train, and that is what the personal injury cases cited by appellant hold. They are cases where the jerk was caused by the slack in the train. Besides, in those cases, the defendant placed the train crew upon the witness stand and explained the movement of the train. Jones v. Railroad, 31 Mo. App. 614; Guffey v. Railroad, 53 Mo. App. 462; Choate v. Railroad, 67 Mo. App. 108; Pome-

roy v. Railroad, 51 N. E. 523; Beebe v. Railroad, 50 N. E. 1019. (3) The court did not err in giving plaintiffs' instruction No. 1. (a) Richards was a general agent of the defendant. He had full charge of both the freight and passenger business of defendant at Mexico. Edwards v. Insurance Co., 100 Mo. App. 695; Hackett v. Van Frank, 105 Mo. App. 384; Hill v. Bank, 87 Mo. App. 590; Sweet v. Sullivan, 77 Mo. App. 123; Clack v. Supply Co., 72 Mo. App. 506; Cross v. Railroad, 71 Mo. App. 585; Walkins v. Edgar, 77 Mo. App. 148; Cross v. Railroad, 141 Mo. 132; Railroad v. Railroad, 110 Mo. App. 300; Reynolds v. Railroad, 114 Mo. App. 672; Hanbelt Bros. v. Mill Co., 77 Mo. App. 679. (b) Limitations imposed by the principal on the apparent authority of the agent are not binding on third parties. Baker v. Railroad, 91 Mo. 152; Ganer v. Railroad, 72 Mo. App. 34; Merriwether v. Railroad, 128 Mo. App. 647; Miller v. Railroad, 62 Mo. App. 252; Wilson v. Railroad, 66 Mo. App. 388; 31 Cyc. 1327. (c) In making a tender all that is necessary is for the debtor to have the money in his immediate possession or control or within reach. Steele v. Biggs, 22 Ill. 643; Wyllie v. Mathews, 60 Ia. 187; Niederhauser v. Railroad, 131 Mich. 550; Wynkoop v. Cowning, 21 Ill. 570; Smith v. Building Assn., 119 N. C. 257; Steckel v. Stanley, 107 Iowa, 694; Sharp v. Todd, 38 N. J. Eq. 324. (d) The money or check need not be offered if the creditor declares he will not receive it. Stephenson v. Kilpatrick, 166 Mo. 262; Berthold v. Reyburn, 37 Mo. 586; Whelan v. Rielly, 61 Mo. 568; Walsh v. Assn., 101 Mo. 534; Westlake v. St. Louis, 77 Mo. 47; Johnson v. Garlich, 63 Mo. App. 578; Bender v. Bean, 52 Ark. 131; Ventres v. Cobb, 105 Ill. 33; Lacey v. Wilson, 24 Mich. 479; Abrams v. Suttles, 44 N. C. 99; Haney v. Clark, 65 Tex. 93.

NORTONI, J.—This is a suit for damages accrued to plaintiffs through defendant's negligence with

respect to the shipment of a carload of horses which it had for the purpose of transportation. Plaintiffs recovered and defendant prosecutes the appeal.

In February, 1910, plaintiffs shipped nineteen head of horses over defendant's railroad from Des Moines, Iowa, to Mexico, Missouri. The horses arrived at Mexico on the morning of February 22, about 6:30 o'clock, and upon their arrival it was discovered that three of them had been seriously injured. The evidence tends to prove the horses were sound and in good condition when loaded into the car and the transportation commenced, but upon reaching Mexico one of the mares had a considerable gash in her head and a gash on her hip also. Another mare revealed a gash in her hip and a filly had suffered a severe cut on the hind leg. The horses were heated and slightly perspiring when they reached Mexico and while in this condition were removed from defendant's car into defendant's stock pen. Plaintiff sought to remove the horses immediately from the stock pen to a barn, but was prevented from doing so by defendant's agent, on account of a controversy over the freight charge.

It appears that the freight on the car was seventy dollars and of this fact plaintiffs had been informed before the shipment commenced. One of the plaintiffs, Cunningham, went to defendant's depot about 7:00 o'clock in the morning and started to write his check for this amount. Defendant's agent informed him, however, that he would not accept the check and that the freight charge was seventy-seven dollars. This amount plaintiff refused to pay, insisting that seventy dollars was the proper charge. Finally one Powell informed defendant's agent that plaintiff's check was perfectly good, and the agent agreed to accept it, but insisted that a payment of seventy-seven dollars should be made thereby. It appears that plaintiff was ready and willing all the time to pay the seventy dollars, but defendant's agent declined to per-

mit him to take possession of the horses until seventy-seven dollars were paid as the freight thereon. The horses stood exposed to the weather in the stock pen during this time, and, through exposure incident thereto, several of them contracted pneumonia, from the effects of which one died.

The first point put forward for a reversal of the judgment concerns the sufficiency of the petition. Defendant interposed a demurrer to the petition but upon its being overruled, it answered over and went to trial. When considered after verdict, the petition is obviously sufficient to support the judgment. This being true, the argument now directed against it is wholly without merit, for the demurrer and the point raised thereby were waived by the act of answering over. [See Hoff v. St. Louis Transit Co., 213 Mo. 445, 111 S. W. 1166.]

It is argued that the court erred in submitting to the jury the question of defendant's liability for damages accrued on account of injuries inflicted upon the horses during transit on the cars. The charge contained in the petition is that the horses received their injuries through defendant's negligence, and no one can doubt that the burden of proof with respect to this matter rests upon plaintiff, for negligence is a positive wrong and will not be presumed. [Funsten Fruit & Nut Co. v. Toledo, St. L. & W. R. Co., 163 Mo. App. 426, 143 S. W. 839.] But though such be true, it is entirely clear that plaintiff made a prima facie case, and the question was one for the jury. There is testimony in the case tending to prove that at one place during the journey from Des Moines to Mexico the locomotive was uncoupled from the train, picked up a car from a sidetrack and coupled it into the train with such force as to severely shock even those in the caboose. It is said that this coupling was made with such unusual force as to knock down the coal which was piled up in a corner of the caboose and scatter it about

the floor thereof, and that the collision was a severe one. Indeed, there is evidence tending to prove that a like shock occurred two or three times during the trip while couplings were being made. It is to be conceded that one may not recover for an injury received from the ordinary jerk or jar of a freight train, for, as to such ordinary and usual occurrences, the risk is assumed; but, obviously, the act of coupling a car into a freight train with the force revealed here is not of that ordinary and usual character above mentioned. The evidence above set forth is sufficient, as we have heretofore declared, to render the question one for the jury, for it authorized a legitimate inference of negligence on the part of the engineer and those engaged in the coupling of the car, as we have heretofore declared in Mitchell v. Chicago & A. R. Co., 132 Mo. App. 143, 112 S. W. 291.

But aside from this, the wounded condition of the horses themselves upon arriving at Mexico is sufficient to suggest a reasonable inference of negligence on the part of defendant. While it is true that the shipper takes the risks incident to the proper vice of the animal and its companions in the car, as well as those of his own negligence, the act of God and the public enemy, it is true, too, that very slight proof of negligence will suffice to lay the burden of exculpation from fault upon the carrier. If it appears, as it does here, that the animals were in good condition when delivered to the carrier for transportation and that they were severely gashed and wounded upon reaching their destination, the jury may infer from such facts alone that the transportation was not attended with due care. In other words, the cause of the injury may be established from collateral facts and circumstances affording a reasonable inference of negligence, identically as other facts may be established in a suit at law. We have heretofore declared that, where the liability sought to be enforced is that at common law, a prima

facie case of negligence, or breach of duty in respect of the transportation of animals, will arise upon showing that the animals were wounded, as by external violence, during transit and thus evince a physical condition which does not usually appear if the carriage was had with ordinary care. From such a showing, the jury is authorized to infer, and may find, the defendant negligent. In other words, when it appears the horses were severely gashed about the head, legs and hips as though they had been roughly used and pitched about in the car, such proof will suffice for the prima facie purposes of the case, and the burden is thereby shifted to defendant to relieve itself of the charge of negligence. [Foust v. Lee, 138 Mo. App. 722, 119 S. W. 505; Libby v. St. Louis, I. M., etc. R. Co., 137 Mo. App. 276, 117 S. W. 659; Hance v. Express Co., 66 Mo. App. 486; Cash v. Wabash R. Co., 81 Mo. App. 109.] The Supreme Court has declared the rule in respect to inanimate freight, as will appear by reference to Witting v. St. Louis & S. F. Ry. Co., 101 Mo. 631, 14 S. W. 743. Of course, something more should appear, tending to prove the negligence of the carrier, when the injury is to live stock than when to inanimate freight, for, as to live stock, the shipper must offer something from which the jury may find the injury was not received as a result of the proper vice of the animal or its companions in the car. As to inanimate freight, the carrier is an insurer against all perils, excepting only the act of God, the public enemy and the negligence of the shipper; whereas as to live stock, there is to be excepted, besides these, from the obligation of insurer, the proper vice of the animal. But the authorities declare that, if the wounded condition of the animal suggests the injuries were received from external violence, during the transportation, and evinces a physical condition which does not usually attend a carriage with due care, such will suffice to repel the presumption

pertaining to proper vice and cast the burden upon the carrier. [See authorities, supra.] It is entirely clear the case made as to these injuries was for the jury, and the court did not err in declining to direct a verdict for defendant.

The remaining item of recovery pertains to the horse that died from pneumonia, which, the evidence tends to prove, was contracted through the fault of defendant in witholding it in the stock pen from plaintiff during the exceeding cold weather. It appears all of the horses were heated and slightly perspiring when unloaded from the car into defendant's stock pen at Mexico, and the thermometer stood at one degree below zero. The evidence is that such an exposure of a heated horse is likely to, and frequently does, occasion the disease. Though Cunningham, one of the plaintiffs, tendered his check immediately to defendant's agent for the seventy dollars freight and sought to remove the horses from the stock pen to a barn, the agent declined to accept the check for two reasons: First, as it appears, because he did not know Cunningham; and, second, because he insisted the freight charge was seventy-seven dollars. Cunningham and the agent parleyed about this matter for probably a half hour when Powell informed defendant's agent that plaintiff's check was perfectly good. Upon receiving this assurance from Powell, the agent signified his willingness to accept the check for the freight, but insisted still it should be in the amount of seventy-seven dollars, and that he would accept no less. The evidence most favorable to plaintiff tends to prove that defendant's agent continued to insist upon seventy-seven dollars, as the freight charge, until about 11:00 o'clock in the forenoon, when the horses had become thoroughly chilled, and one of them could scarcely walk as a result of the severity of the exposure. About 11:00 o'clock, defendant's agent discovered that he was in error with

respect to the amount of the freight and that plaintiff was right, or that seventy dollars only was due therefor and not seventy-seven, as he had theretofore insisted.

Touching this matter, the court gave the following instruction for plaintiff: "If the jury believe from the evidence that one of the plaintiffs called at the office of defendant to pay the freight charges on said horses and that he offered to pay the same by check and that defendant's agent refused to accept a check and demanded a sum in excess of the legal charges and that afterwards defendant's agent became satisfied that plaintiff's check was good and informed plaintiff that he would accept from him a check for the freight charges but demanded that such check be for an amount in excess of the legal freight charges and refused to deliver the horses to plaintiffs until paid such sum demanded by him (in excess of the legal freight charges) either in check or in money, then the fact that plaintiffs did not tender the legal freight charges in money to defendant's agent is no defense to this action."

It is argued the court erred in this for the reason it was not within the power of defendant's agent to waive the payment of freight in money and receive a check therefor. It appears defendant's agent was one possessing general authority, as to such matters, for it at Mexico, as he was in charge of both the freight and ticket office there and conducted defendant's business in both departments at that point. The agent himself testifies that he accepted checks in payment of freight from persons whose checks he knew to be good and that he did this as a common practice. Obviously, it was within his apparent authority to receive checks for such purpose, in transacting defendant's business, and any limitations imposed by the company upon the apparent authority of the

agent would not affect a person dealing with him unless brought to the knowledge of such person. [See Baker v. Kansas City, St. J. & C. B. R. R. Co., 91 Mo. 152, 3 S. W. 486.] But be this as it may, the check was not refused, after Powell assured the agent that it was good, because the agent had no authority to accept it, but, instead, it was refused because the agent insisted that seventy-seven dollars should be paid, when the freight was only seventy dollars. From the facts and circumstances in the record, it is entirely clear that the agent would have refused seventy dollars in money identically as he did the seventy dollar check. It is well settled in the law of tender that the actual production of the money may be waived by the person to whom it is due, in refusing to accept the sum due, and such refusal makes the proffer to pay as good as though the money were counted down. In other words, when it appears, as it does here, that defendant would not accept seventy dollars in money if tendered, then the requirement of the law that the tender should be in money instead of a check is waived. [See Stephenson v. Kilpatrick, 166 Mo. 262, 65 S. W. 773; Berthold v. Reyburn, 37 Mo. 586; Whelan v. Reilly, 61 Mo. 565.] The instruction above copied was proper enough on the facts of the case, for the evidence is that defendant's agent refused the check, not because it was a check, but because plaintiffs declined to make it for seventy-seven dollars when but seventy dollars was due, and it appears, too, that, during the several hours of the controversy, the agent would not have accepted for the freight seventy dollars in cash, the true charge, if tendered.

Though there are other arguments advanced for a reversal of the judgment, what has been said disposes of all of the questions raised.

We see no error in the instructions given and none in the action of the court in refusing those of

defendant requested but not given. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.

**St. Louis Court of Appeals, July 19, 1912. Motion for Rehearing Overruled October 15, 1912.**