W. L. JONES, RESPONDENT, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, APPELLANT.—50 S. W. (2d) 217.

Kansas City Court of Appeals. May 2, 1932.

*Wm. Anderson* for respondent.

*E. T. Miller, Henry S. Conrad, L. E. Durham, Hale Houts, Ilus M. Lee* and *Wright Conrad* for appellant.

ARNOLD, J.—This suit was instituted in the circuit court of Cass county, Missouri, to recover damages for injuries to horses and mules in interstate shipments over defendant's railroad.

The petition was in two counts, involving two different shipments. The second count was dismissed and the cause was tried on the first, which alleged damage to seventeen mules and three horses out of a consignment of seventy-five mules and seven horses, in three of defendant's cars from Belton, Cass county, Missouri, to Memphis, Tennessee, on December 25, 1929. It is alleged the said livestock was delivered to defendant in good merchantable condition and that when the shipment was received at Memphis, seventeen head of the mules and three head of horses were in a damaged condition, in that they were lame and bruised about the head, legs and hips, and there were cuts and wounds on their heads and shoulders. Damages were asked in the sum of $1500. The answer was a general denial. A trial resulted in a verdict and judgment for plaintiff, in the sum of $900. Motions for a new trial and in arrest of judgment were overruled, and defendant has appealed.

The record discloses plaintiff resides at Belton, Cass county, Missouri, and, in addition to being engaged in farming, buys and ships horses and mules; that defendant is a common carrier for hire and operates a railroad between Belton, Missouri, and Memphis, Tennessee. The testimony shows the animals were placed in defendant's stock pens at Belton, about two hours before the arrival of the train that was to pick them up; that they were quiet and peaceful while in the pens; that they were loaded into three cars, two being occupied exclusively by mules, while the third contained mules and the seven head of horses. The stock was loaded into the cars by plaintiff and his son. There was also a mixed car of horses and mules belonging to one E. D. Sands who lives at Peculiar, in Cass county, but made this shipment from Belton. Testifying for plaintiff, Sands stated the Jones shipment and his were loaded in the cars at Belton and placed in the same train; that he (Sands) accompanied the shipments by way of Kansas City, but that Jones did not; that at Grandview, Missouri, he aided the conductor in wiring up a loose board on the car in which the Sands stock was being transported; that he did not aid in making any repairs to the Jones cars; that he saw the Jones stock at Grandview and the animals were quiet and peaceful; that he did not see them any more until they reached Memphis. Witness stated some of his own stock was injured in transit, but he made no claim for damages by reason thereof.

Sands testified the shipment reached Memphis in the early evening of Thursday or Friday of the week, and was unloaded in the stock pens of the Guyton Stock Yards Company, a regularly established stock market; that sales were made at said yards by auction, begin-

ning Monday of each week and continuing until the stock offered was disposed of which was usually a matter of three or four days. Witness stated he saw the Jones shipment unloaded at the Guyton yards and that number of the mules was injured, being lame, bruised about the heads and stiff in the legs and hips; that about twenty-five or thirty were so injured; that he was at the yards when the Jones stock sold and that some were sold as low as $42.50 and down to $20 per head, when $50 would have been very cheap for them; that, uninjured, they should have brought $75 to $100 per head.

There was testimony on behalf of defendant that the animals in the Jones shipment were restless and fighting; that at Thayer, Missouri, a division point, an inspector repaired some boards that had been broken and kicked from the siding of one of the cars. No testimony of an eyewitness to the alleged injuries was introduced. Plaintiff and his son testified that the stock in question, while in defendant's stock pens at Belton, were not fighting, but were quiet and peaceable; that they had run together in the feed lot at the farm for a period of about three months immediately before the shipment and none showed any vicious propensities; that plaintiff and his son saw the animals loaded into the cars and none was damaged at the time, but all were in good, merchantable condition. Over defendant's objection there was introduced in evidence an "account sales" of the Guyton Company showing the price brought by each animal at the auction sale, which tended to corroborate plaintiff and witness Sands in respect to the price of each animal at such sale.

At the close of plaintiff's case, and again at the close of all the evidence, defendant asked peremptory instructions in the nature of demurrers, which were overruled. In support of the appeal, defendant makes seven assignments of error which are discussed under four headings, under points and authorities. The first is that the court erred in refusing defendant's instruction in the nature of a demurrer, at the close of all the evidence, because the evidence was insufficient to warrant a finding that defendant was responsible for any damage or injury the animals may have sustained. On this point it is urged that in a shipment of live stock, it is necessary for the plaintiff not only to show that the animals were delivered to defendant in good condition and arrived at destination in a damaged condition, but also to show that such damage was not due to their inherent nature or propensities, but, at least, inferentially, to some improper handling by defendant. [Citing Cash v. Railroad, 81 Mo. App. 109; Cunningham v. Railroad, 167 Mo. App. 273; Bragg v. Payne, 235 S. W. 148; Moran v. Railroad, 255 S. W. 331.]

It is not disputed that only slight evidence is sufficient to create an inference that animals were injured by rough handling, rather

than by their inherent nature or propensities. It is insisted that in the case at bar there was no evidence on this point beyond the mere showing the stock was delivered to defendant in good condition and delivered at destination in a damaged condition. It is further pointed out that plaintiff's own witnesses admitted that mules mixed with horses sometimes fight and injure each other while being transported in railroad cars; and that defendant offered evidence to the effect that the animals in question in this case, in fact, had fought and kicked off boards, as per a record made at Thayer, Missouri, yards (not in evidence), as well as the testimony of the conductor who took the cars out of Belton. But this evidence was contradicted by witness Sands who stated the broken board was on the car containing his shipment and not on either containing the Jones shipment. Defendant insists that Sands' testimony on this point is very unsatisfactory, and of no probative force and, therefore, that there was no competent evidence of injury to the animals.

We hold this position unsound. There was substantial evidence the animals were in a damaged condition when unloaded at Memphis. We cannot, of course, pass upon the weight of the evidence. There being substantial evidence to the effect already indicated, we cannot say plaintiff did not make a case for the jury. Plaintiff points out that the testimony shows the horses and mules had run together in the pasture for about ninety days and showed no vicious propensities, either there or while in the stock pens at Belton, and were peaceable; and that the injuries consisted of bruises about their heads, shoulders and hips. It is urged in this situation, the jury well might have concluded the said injuries were due to some negligent act or acts of defendant. It was held in Morrow & France v. Wabash Railroad, 219 Mo. App. 62, 67, 256 S. W. 851:

"The rule is well settled in this State that if the wounded condition of the animal suggests the injuries were received from external violence, during the transportation, and evinces a physical condition which does not usually attend carriage with due care, such will suffice to repel the presumption pertaining to proper vice and cast the burden upon the carrier." [Citing Cunningham v. Wabash Railroad, 167 Mo. App. 273, 282, 283; Cash v. Railroad, 81 Mo. App. 109; Blair Horse & Mule Co. v. Railroad, 180 S. W. 412; Robinson v. Bush, 200 S. W. 757; Moran v. C. B. & Q. Rd. Co., 255 S. W. 331.]

It must be held, therefore, that when plaintiff had proved the animals were delivered to defendant in sound, merchantable condition, and were delivered at destination in a damaged condition, and the injuries were such as do not attend carriage with due care, plaintiff has made a prima-facie case, the burden of proof shifts to defendant, and the question is for the jury.

Directly on this point is the opinion in the case of Cunningham v. Wabash Railroad, 167 Mo. App. 273, 281, 149 S. W. 1151, where it is said:

"If it appears, as it does here, that the animals were in good condition when delivered to the carrier for transportation and that they were severely gashed and wounded upon reaching their destination, the jury may infer from such facts alone that the transportation was not attended with due care. In other words, the cause of the injury may be established from collateral facts and circumstances affording a reasonable inference of negligence, identically as other facts may be established in a suit at law. We have heretofore declared that, where the liability sought to be enforced is that at common law, a prima facie case of negligence, or breach of duty in respect of the transportation of animals, will arise upon showing that the animals were wounded, as by external violence, during transit and thus evince a physical condition which does not usually appear if the carriage was had with ordinary care. From such a showing, the jury is authorized to infer, and may find, the defendant negligent."

[See also Foust v. Lee, 138 Mo. App. 722, 119 S. W. 505; Cash v. Wabash R. Co., 81 Mo. App. 109; Libby v. Railroad, 137 Mo. App. 276, 117 S. W. 659.] We therefore rule this point against defendant. There was no error in refusing defendant's instruction in the nature of a demurrer at the close of all the evidence.

Under Point 2, it is urged the court erred in admitting certain evidence offered by plaintiff; that the testimony of witness Sands that twenty-five or thirty of plaintiff's animals appeared to be injured was inadmissible for indefiniteness. The testimony thus attacked is as follows:

"Q. Did you see Mr. Jones' stock unloaded? A. I saw them there.

"Q. You did see the stock? A. Yes, sir.

"Q. Tell the jury what was their condition when they were put in the chutes? A. You could not tell very much about them until they got into the pens.

"Q. They came out of the cars? A. Of course, they were injured, the injuries developed more by the next morning and quite a few of them were injured.

"Q. How were they injured? A. They were lame, bruised about the head and stiff in the legs and hips.

"Q. Approximately how many were injured? A. Going through the pens it looked like twenty-five or thirty.

"MR. LEE: I object to that unless he knows from his own knowledge.

"A. There were twenty-five or thirty.

"Q. In the car loads that were shipped? A. Yes, sir.

"MR. LEE: I object to that as too indefinite.

".THE COURT: Overruled."

It will be noted the witness testified positively that twenty-five or thirty of the animals were injured. That they were injured was quite definite; the exact number showing injury was indefinite, but this indefiniteness was dissipated in the account sales introduced in evidence, supported by oral evidence of its correctness. Both plaintiff and the witness Sands testified to being present when each individual animal was sold and both stated they knew how much each animal brought at the sale; that the account sales was correct in showing this. It is defendant's position the court erred in receiving in evidence the account sales not identified by the party who actually made it. Defendant leans heavily on the case of Miller v. Railroad, 205 Mo. App. 463, 473, 225 S. W. 116, where it is said:

"The 'account of sales' which plaintiff received for the sale of his sheep at St. Louis should not have been admitted without proof that it correctly showed such sales. No such proof was introduced. Hazelwood said it was a correct copy but does not say the 'account of sales' was correct and showed what the sheep actually sold for. [Stockwell v. Union Pacific R. Co., 182 S. W. 829; Moore v. St. Louis & San Francisco R. Co., 143 Mo. App. 675.]"

The Miller case, instead of supporting defendant's position, is to the contrary as applied to the facts in the case at bar. The record shows plaintiff testified he was present, saw the stock sold and that he personally knew how many were injured; that there were twenty so injured. And, in a manner corroborative of plaintiff is the testimony of witness Sands who testified that twenty injured mules and horses should have brought $75 to $100 each, if offered in the condition in which they were shipped; that he was present when the damaged animals were sold and that they brought from $20 to $42.50 each. Plaintiff urges the account of sales was offered in evidence only to corroborate plaintiff and Sands who testified they were present when the mules were sold, knew what they were sold for, and what others of the same quality sold for; knew the nature of their injuries and how many were injured. Under the facts in evidence and the ruling in the Miller case, supra, we must conclude there was no error in receiving the account sales in evidence, for the purpose for which it was offered.

It is charged (Point 3) the court erred in giving plaintiff's Instructions 1 and 3; that these instructions are erroneous in that they make defendant an insurer of a live stock shipment and authorize the jury to find for plaintiff without requiring a finding

that the animals were not injured by reason of their inherent nature or propensities. Instruction No. 1 reads:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff offered or tendered for shipment over defendant's railroad from Belton, Missouri, to Memphis, Tennessee, three car loads of horses and mules and that the said defendant received the same for shipment at the point of origin, and if you further find and believe from the evidence that at the time that the said defendant received the horses and mules (they) were in good, marketable condition and when the same were delivered by the defendant to the plaintiff at the point of destination, that they were not in a good, marketable condition, but a damaged condition, then your verdict will be for the plaintiff."

This instruction purports to cover the entire case and directs a verdict for plaintiff, and does not require a finding that the damage to the animals, if any, was not due to their inherent nature and propensities. The instruction goes no further than merely to require the jury to find the stock was delivered to the carrier in good condition and delivered at destination in damaged condition, in order to find for plaintiff. This point was discussed and passed on by this court in Moran v. Railway, 255 S. W. 331, 335, as follows:

"We think the instruction should go further than merely requiring the jury to find that the animals bore evidence of external violence in order to raise the presumption of negligence, and submit that such injuries showed that they were not brought about by the natural propensities of the animals, but through rough handling of the train. [Cash v. Railroad, supra; Cunningham v. Railroad, supra; Cloyd v. Railway (Mo. App.), 240 S. W. 885.]

The cause of the injuries to the stock was a controverted issue and evidence was introduced in support of each of the disputed theories. An instruction purporting to cover the whole case and directing a verdict must require a finding embracing defendant's theory as well as that of plaintiff.

Plaintiff insists defendant is barred from raising the issue as to whether or not the stock in question were injured by their own natural vice and propensities, because the answer was only a general denial. The contract of shipment was not pleaded, nor was it introduced in evidence. We hold this position unsound. Defendant argues and properly so, that it was basing its defense on the common-law rule that a carrier is not liable for injuries arising from the natural vice and vicious propensities of the live stock. It was said in Sullivan v. American Ry. Exp. Co., 211 Mo. App. 123, 245 S. W. 375, 376:

"At common law, in the absence of a special contract, the liability of the carrier is the same with respect to livestock as to inanimate freight, with certain additional exceptions. The exceptions with respect to livestock are that the carrier is not liable if its failure to properly and safely deliver in safe condition was due to the act of God, the public enemy, the inherent vice and nature of the animal or its vicious propensities or the fault of the shipper. The only difference as to the liability between animate and inanimate freight is the inherent vice or vicious propensities of the livestock."

We think instruction No. 1 was fatally erroneous, in any even, for even if the burden was on defendant to establish the fact that the animals were damaged by their vicious propensities, the instruction excluded that issue from the jury. The rule is well established that it is reversible error if an instruction ignores issues and excludes them, regardless of where the burden of proof falls. In Beebe v. City, 17 S. W. (2d) 608, 613, this court held:

"The doctrine that instructions must not restrict the issues only means that the instructions must not ignore essential elements of plaintiff's case, nor essential matters of defense."

It is said in Luft v. Strobel, 19 S. W. (2d) 721, 731, citing Cassin v. Lusk, 277 Mo. 663, 673, 210 S. W. 902, 905:

"An instruction, which purports to cover the entire case and (to) direct a verdict, must contain within itself a submission of all the issues upon every phase of the evidence, and that any failure on the part of such an instruction in that respect constitutes reversible error."

It is charged that instruction No. 2 is likewise erroneous because, in effect, it purports to cover the entire case, while in terms it does not authorize a verdict, yet if refers to instruction No. 1 which does advise the jury upon the burden of proof which goes to the entire case. However, as the judgment must be reversed and the cause remanded by reason of the error in instruction No. 1, it is not necessary to discuss instruction No. 2, as it may not appear in this form at another trial. Defendant urges instruction No. 2 was erroneous in other respects, but in view of what has already been said, we need not discuss these charges.

Instruction No. 3 is attacked for error on the ground it ignores the exception prevailing as to live stock shipments which requires the shipper to go beyond showing merely delivery to the carrier in good condition and delivery by it in a damaged condition, and to show that the damage was not caused by the inherent nature and propensities of the animals. This instruction was on the burden of proof and did not attempt to cover the entire case and direct a verdict. The position of defendant cannot be sustained, for the

reason that an instruction was asked and secured by defendant to its liking on the burden of proof.

It is urged that instruction No. 2 is erroneous in that it improperly states the measure of damages as the difference between the reasonable value of the animals in good condition and the amount for which they were actually sold, rather than the difference between their reasonable value, or market value uninjured, and their reasonable or market value as injured.

The rule in respect to the measure of damages is stated in the case of Morrow & France v. Wabash Railroad Co., 219 Mo. 62, 70, 265 S. W. 851:

"The general rule by which damages such as these are to be arrived at is that where the shipment is injured through a cause for which the carrier is responsible, the shipper is entitled to recover the difference between the value of the shipment at destination in its damaged state and what its value would have been if uninjured. [Matney v. Chicago, R. I. & P. Railroad, 75 Mo. App. 233; Pipe Co. v. Railroad, 137 Mo. App. 479.]"

With this rule in mind, we hold instruction No. 2 does not offend in the manner last charged, because the undisputed evidence is the stock was put up at auction and sold on the open market. Hence the instruction is not erroneous.

Finally, it is said the verdict is excessive; but inasmuch as the cause must be retried, a discussion of this point is unnecessary. For reasons above stated, the judgment is reversed and the cause remanded for another trial. All concur.