238 S.W.2d 66 (1951)
DEVOTO
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 27986.
St. Louis Court of Appeals, Missouri.
March 20, 1951.
*67 Carroll J. Donohue and Salkey & Jones, all of St. Louis, for appellant.
Thos. M. Gioia and E. H. Schwarzenbach, St. Louis, for respondent.
McCULLEN, Judge.
This is a suit for damages for personal injuries alleged to have been sustained by plaintiff as the result of defendant's negligent operation of one of its busses, which plaintiff alleged struck him while he was crossing a street in the City of St. Louis on March 25, 1948. A trial before the court and a jury resulted in a verdict and judgment in favor of plaintiff and against defendant in the sum of $6000.00. Defendant duly appealed.
Plaintiff's petition alleged that his injuries were directly and proximately caused by the failure of defendant to exercise the highest degree of care in the operation of its bus and that the bus struck plaintiff while he was crossing Grand Avenue eastwardly at Shenandoah in the City of St. Louis. The petition charged eight different assignments of negligence against defendant, but we deem it unnecessary to set them forth here, since no question is raised on the pleadings.
The answer of defendant admitted the allegations in paragraphs one and two of plaintiff's petition, namely, that defendant is a corporation, and that Grand Boulevard and Shenandoah Avenue were open public streets in the City of St. Louis. The answer then denied generally the allegations in paragraphs three, four, and five constituting the remainder of plaintiff's petition.
Plaintiff testified that he was 71 years old and unmarried; that he had been unemployed for two and one-half years although he had been employed at Weldon Springs, Missouri, during the last war; that his only source of income is $19.62 per month which he receives for old age assistance; that on March 25, 1948, he had been visiting with Mr. Keil, a lawyer at 4050 Chouteau Avenue and had left Keil's office at 8 o'clock in the evening; that he walked to Grand Avenue and proceeded south on the west side of Grand Avenue to Shenandoah Avenue; that Shenandoah Avenue jogs at Grand Avenue and that the part of Shenandoah west of Grand is a short distance south of the part of Shenandoah east of Grand; that visibility was very good and the streets were dry; that lighting at the intersection was good, there being a theater and several retail stores with large electric signs in the immediate vicinity; that there were also a number of electric street signs on the four corners of the intersection.
*68 In describing the accident, plaintiff testified that when he came to the intersection of Grand and Shenandoah on the west side of Grand, he stepped off the curb into Grand Avenue to cross Grand Avenue, going to the east; that he walked rapidly and inside a lane marked in the street for pedestrians; that there was no traffic from the north or south; that after he crossed both sets of streetcar tracks in Grand Avenue and as he stood in the street looking to the south he saw a light over his shoulder and turned around and saw a Tower Grove Bus with its "big glass" coming pretty fast, about eighteen or twenty miles an hour; that the bus struck him and knocked him to the street; that both of his legs and two fingers were broken and he struck the back of his head; that he was past the center line of Grand Avenue when the bus struck him and when he first saw the bus it was three feet away; that he heard the bus sound no warning and that he did not know what the bus did after striking him.
Describing his injuries, plaintiff testified that his right leg was broken and put in a cast and remained in a cast for seven weeks; that his left ankle was broken and bleeding and his left knee pained him; that the third and last fingers of his left hand were broken; that the back of his head was opened up and bleeding; that stitches were put in his head; that at the time of the trial he was suffering from pain morning, noon, and night in his left ankle and left knee which he cannot control, and this condition causes his foot to "flop out"; that at the time of the trial his right leg was all right but that the left leg was bandaged and pained him.
On cross examination plaintiff testified that after he left the northwest corner of Grand and Shenandoah he walked directly east over Grand Avenue and if nothing had happened he would have walked to the southeast corner of Grand and Shenandoah because of the jog in Shenandoah at that point. He testified that he arrived at the northwest corner of Grand and Shenandoah about a quarter to nine; that he looked to the north and could see a number of blocks but nothing was coming; that he then looked to the south for traffic when he was on the northbound or east streetcar tracks; that he continued to look to the north until he reached the middle of the tracks and while he was looking to the north he saw no southbound traffic, although he could see for several blocks; that after reaching the middle of Grand Avenue he looked south but saw no northbound traffic; that when he was a foot and a half past the northbound tracks, the light over his shoulder attracted his attention and he threw up his hand to protect himself and was hit before taking another step; that he did not stop walking up to the time he was struck; that before he stepped into Grand Avenue from the northwest corner of Grand and Shenandoah he looked down Shenandoah and could see about three quarters of a block but that nothing was coming and he did not see a bus or the lights of a bus; that the front of the bus came in contact with him and struck him; that the bus was then moving southwest; that he did not notice the headlights of the bus; that it was the front of the bus that struck him but he did not know what part of the front; that he did not know whether any other part of the bus came in contact with him.
A portion of plaintiff's deposition, taken before the trial, was called to plaintiff's attention and he admitted that in the deposition he had stated that the back wheels of the bus had come in contact with him, although at the trial plaintiff testified in this connection as follows:
"Q. Did any other part of the bus come in contact with you?
"A. If it did, I don't know. They might have run over my feet or something and cut me or something, I don't know, I was * * * It knocked me out."
In this connection plaintiff also testified: "I figured from my ankle bleeding and all, I was rolled over by theI don't know how I got that cut, I figured I got that from the wheel, but I wasn't sure."
Plaintiff further testified that he was in the City Hospital for four days and then went back for treatment about once a week; that he was on crutches for two months and on two canes for about two months.
*69 Oscar Stusse called as a witness for plaintiff testified that he sells newspapers at Grand and Shenandoah between 8 P.M. and 11:30 P.M. and was so employed on the evening of March 25, 1948; that he saw the accident involving a Tower Grove Bus; that the bus was crossing Grand Avenue going west and struck plaintiff; that the bus then finished crossing the street from east to west and stopped; that he did not know at what speed the bus was traveling but finally said it was traveling about one mile an hour; that after the accident plaintiff was taken to the City Hospital.
On cross examination the witness testified that his newspaper business is on the corner at the lamp post where there is a hamburger place; that the traffic was ordinary as to volume which, according to the witness, means it was pretty heavy going both ways on Grand Avenue; that the witness was standing on the southeast corner of Grand and Shenandoah; that plaintiff was walking towards the northwest when the accident happened. The witness, after stating that plaintiff was walking towards the northwest when he was struck, was repeatedly questioned as to the direction plaintiff was walking at that time but stuck to his testimony that plaintiff was walking to the northwest when he was struck. It will be noted that the direction in which plaintiff was walking, according to this witness, was directly opposite to the direction testified to by plaintiff himself.
Dora Ellerbrook called as a witness for plaintiff testified that she operated a rooming house and that plaintiff roomed at her place at the time of the accident; that when plaintiff came home from the hospital she took care of him for about five months.
Dr. Albert Repetto called as a witness for plaintiff testified that he was resident physician at the City Hospital. The witness did not personally remember this case and testified from the hospital record. He stated that he saw plaintiff on the night he was admitted to the hospital and on the next morning; that he diagnosed plaintiff's fracture as a lateral malleolus fracture of the right ankle, lateral fracture of the left knee and fractures of the fourth and fifth phalanges of the left hand; that there was no injury of the head; that the fracture of the right leg was at the ankle; that the fracture of the left leg was a lateral tibial fracture of the knee.
On cross examination Dr. Repetto testified that he did not note any head injury except a small cut on plaintiff's head. Over the objection of defendant, counsel for plaintiff read parts of the record of the City Hospital showing the treatment plaintiff received at that hospital. The record showed that x-rays taken of plaintiff on March 25, 1948, revealed calcification of the left knee, possible fracture of the left knee, fractures of proximal ends of proximal phalanges of the left hand in good position and alignment; that x-rays taken of plaintiff dated March 26, 1948, revealed fractures of the right hand and left ankle with fragments in good position; that x-rays of plaintiff dated March 29, 1948, revealed fractures of right ankle and left hand.
Dr. Repetto was cross examined in relation to the City Hospital report and expressed doubt as to the correctness of the x-rays of plaintiff dated March 25, 1948, because at one point the witness pointed out the report said plaintiff had a fracture and at another point it said he had no fracture; that the final analysis when plaintiff was discharged from the hospital, according to the report was "simple fracture left fourth and fifth metacarpals, simple fracture right fibula, multiple abrasions contusions."
Dr. Repetto said that the injuries last above described would represent the major findings; that there was some confusion in the hospital report as to the extent and nature of plaintiff's injuries because of the omission from the report of any mention of a fracture of the knee. The doctor testified:
"Q. They don't usually overlook a fracture of the knee, do they? A. They don't usually, but it is possible.
"Q. They don't usually overlook fracture of the left ankle, do they, when a man is supposed to have three fractures? A. I am answeringI didn't code this out myself. It is obvious, I don't see how I *70 can vouchsafe for someone else's word. It is conceivable to me that they missed putting down something there.
"Q. The final diagnosis is of one simple fracture, isn't that correct, according to this record, in addition to the fracture of the fingers I speak of? A. The final diagnosis as listed there is one fracture, yes.
"Q. There is no mention made of the knees? A. Not on that front sheet, no."
Frank Sirota called as a witness for defendant testified that he was a police officer; that he investigated the accident at Grand and Shenandoah on March 25, 1948; that plaintiff was lying on the Grand Avenue northbound streetcar tracks close to the crosswalk; that he examined the bus and found no marks on it and that the slight layer of dust on the bus was not rubbed off at any point; that the witness Stusse was present at the scene but did not give his name to Officer Sirota when Sirota inquired if anybody had seen the accident.
Richard Eckstrand called as a witness for defendant testified that he was a police officer and on March 25, 1948, investigated the accident at Grand and Shenandoah; that plaintiff was lying on the Grand Avenue northbound streetcar tracks in the crosswalk; that Oscar Stusse told the witness that he, Stusse, did not wish to be a witness in the case. Officer Eckstrand testified that he examined the bus with a flashlight and found no mark that indicated that it had come into contact with anything.
Joseph Sorenson called as a witness for defendant testified that he was a passenger on the bus in question at the time involved herein and was sitting behind the driver; that he had a good view of the street at the time of the occurrence; that the bus made the boulevard stop on the east side of Grand Avenue and then crossed Grand Avenue. The witness saw no one in front of the bus and felt no impact as the bus crossed Grand Avenue; that he had no idea that an accident had occurred until the bus made the regular stop across the street and someone who came running across the street said there had been an accident.
Charles W. Moore testified on behalf of defendant that he was a passenger on the bus in question at the time involved herein; that he was sitting behind the driver and had a good view of the street; that the bus made the boulevard stop at Grand Avenue and then crossed over Grand Avenue; that the witness saw no person in front of the bus and felt no impact as the bus crossed over Grand Avenue.
Louis Praprotnik called as a witness for defendant testified that he was the operator of the Tower Grove Line Bus involved in the occurrences herein; that the bus was being driven westward on Shenandoah Avenue and had made the boulevard stop for Grand Avenue; that the traffic was not heavy and he drove the bus across Grand Avenue in the regular lane going at about three to five miles an hour; that he saw no pedestrian and did not hit a pedestrian; that after he stopped the bus in a loading zone on the west side of Grand Avenue someone told him that he had an accident; that he did not strike anyone with the bus and as the bus crossed over Grand Avenue it would have missed by five to eight feet a pedestrian who was in a position one foot or one and one-half feet east of the northbound tracks in the crosswalk way. The witness further testified that after the bus had stopped on the west side of Grand Avenue he got off the bus, went back to the center of the street where he saw plaintiff lying in the street between the northbound and southbound streetcar tracks.
On cross examination the witness testified that as he crossed Grand Avenue going at three to five miles an hour he could have brought his bus to a stop in eight to ten feet; that visibility was good and he could see everything at the corner.
On redirect examination the witness testified that as he crossed over Grand Avenue he didn't swerve his bus or sound his horn because there was nobody in front of the bus.
Dr. J. P. Murphy was called as a witness for defendant and testified that he was associated with several hospitals and specialized in orthopedics; that he examined plaintiff on October 4, 1948, and found him *71 to be an active person who was able to go about without difficulty; that there was some discoloration on plaintiff's left leg but no restriction of its movement; that there was no restriction of either ankle of plaintiff, but that plaintiff complained of tenderness on palpation of either malleoli; that there was no limitation in the use of plaintiff's left hand except that the middle finger could not quite be touched to the palm; that a radiograph of plaintiff's right ankle revealed a united fracture of the lower fibula; that radiographs of the left hand, left knee and left ankle of plaintiff revealed nothing.
Defendant contends that the court committed reversible error in refusing to give to the jury its instruction marked "C." Said instruction was as follows: "The Court instructs the jury that if you find and believe from the evidence that on the day in question the front part of the bus mentioned in the evidence did not come in contact with plaintiff, then plaintiff is not entitled to recover and your verdict must be in favor of the defendant."
Defendant earnestly insists that said proposed instruction stated the converse of the only theory upon which plaintiff could recover under his evidence and should have been given to the jury by the court. Defendant cites and quotes from a large number of cases in support of this contention.
We think it would serve no useful purpose to review here the cases cited by defendant on this point because it is clear that, although the principle which defendant contends for is a correct principle of law and is correctly applied in said cases, that principle is not applicable to the case at bar under the evidence in this case which is quite different from the evidence in the cases cited by defendant. The refused instruction undertook to single out, comment upon and emphasize a part of the evidence which cannot be said to have been the only theory upon which plaintiff could recover. Under the evidence herein plaintiff's right to recover was not restricted to the theory that only the "front part of the bus struck him." The question as to what part of the bus struck plaintiff was a mere matter of detail of the evidence. The ultimate question to be determined, and on which the liability of defendant depended, was whether the bus itself, without regard to any particular part of it, struck plaintiff by reason of defendant's negligent operation and thereby directly caused plaintiff's injuries.
Instruction "C," if given, would have unreasonably and improperly limited the jury and prevented them from considering all the circumstances in evidence as the basis of defendant's liability. Plaintiff did not charge in his petition that only the "front part" of the bus struck him. He alleged simply that at the time and place mentioned he was struck "by a bus of defendant." No "part" of the bus was alleged to have struck plaintiff. It is true plaintiff testified that the front part of the bus struck him. While this testimony afforded a basis for defendant to argue to the jury that plaintiff's theory was erroneous and that its own theory that the bus did not strike plaintiff at all was correct, it was not a basis for declaring as a matter of law that plaintiff could not recover if the front part of the bus did not strike him.
The refused instruction, if given, would have deprived plaintiff of the benefit of reasonable inferences arising from all the evidence tending to show just how the accident occurred and would have denied plaintiff a verdict simply because "the front part" did not strike him although the jury may have actually believed from the evidence that plaintiff was struck and knocked down by the bus. The evidence shows without dispute that plaintiff was found immediately after the accident on the streetcar tracks in the middle of Grand Avenue. The fact that the bus driver testified that he did not see plaintiff before the accident and that his bus did not strike plaintiff was not conclusive upon the jury in view of plaintiff's positive evidence that he was struck by the bus. The bus operator's testimony and plaintiff's testimony simply made an issue of fact for the jury to determine. Under all the evidence the jury could reasonably have believed that even if defendant's operator did not see plaintiff before the accident he could, by *72 the exercise of the highest degree of care, have seen plaintiff in the street and avoided striking him.
The general rule with respect to instructions limiting the jury's consideration of evidence is clearly and simply stated in 64 C.J., "Trial", page 566, Section 500, as follows: "An instruction which in effect deprives the jury of the right to determine an issuable question of fact is error, as is an instruction which improperly limits the jury in their consideration of the evidence or in their rendition of a verdict. A charge making conclusive that which is only evidential is erroneous."
We think the instruction "C" which defendant requested, if given, would clearly have violated the above rule and would have constituted prejudicial reversible error. We hold that the court properly refused to give the offered instruction.
Defendant next contends that the court erred in giving instruction No. 3 and asserts that although it directed a verdict for the jury, it was incomplete in that it did not hypothesize such facts with respect to the occurrence itself, the finding of which would be necessary in order to warrant a verdict for plaintiff. Said instruction No. 3 was as follows: "The Court instructs the jury that if you find and believe from the evidence that on the occasion mentioned in the evidence, defendant failed to swerve its motor bus away from the plaintiff, when by the exercise of the highest degree of care, defendant with safety to its motor bus and the occupants thereof, if you so find, would have done so, and that in so failing to so swerve said motor bus defendant was negligent and that as a direct and proximate result of such negligence, defendant's motor bus struck plaintiff and injured him, if you so find, then your verdict shall be for plaintiff and against defendant."
In considering the complaints made against said instruction No. 3, we must be mindful of the statute which admonishes appellate courts that "No appellate court shall reverse any judgment, unless it believes that error was committed by the trial court against the appellant, and materially affecting the merits of the action." R.S.Mo.1949, § 512.160. Nevertheless, it is our plain duty to reverse and remand if we are convinced that an instruction was given that materially and adversely affected the appellant's rights.
In the case at bar we have come to the conclusion that instruction No. 3 was erroneous and did materially affect defendant's rights because it failed to hypothesize and require the jury to find as a prerequisite to a verdict for plaintiff all the facts necessary to show the alleged negligence of defendant which caused plaintiff's injury. The instruction told the jury that if defendant failed to swerve its motorbus away from the plaintiff when by the exercise of the highest degree of care it would have done so, and in that so failing to so swerve defendant was negligent, and that as a direct and approximate result of such negligence defendant's motorbus struck plaintiff and injured him, then the verdict should be for plaintiff.
A careful consideration of the instruction shows that it failed to require the jury to find any facts that would give rise to a duty on the part of the defendant to swerve the bus. The instruction assumed that there was such a duty without requiring the jury to find the facts showing such a duty. There was no duty on defendant's bus driver to "swerve" the bus merely because plaintiff was somewhere on the street in the general vicinity of the bus. The duty to "swerve" the bus arose only when plaintiff was in a position of being struck by the bus and the bus driver saw or by the exercise of the highest degree of care could have seen plaintiff in such a position and by such care could have avoided striking him by swerving.
In Stakelback v. Neff, Mo.App., 13 S.W.2d 575, 577, this court had before it a case involving a collision of two automobiles at the intersection of streets. An instruction had been given in that case which authorized the jury to find a verdict for plaintiff without requiring a finding of the necessary facts that would give rise to a duty on the part of the defendant, failure to perform which duty would constitute negligence. This court in holding that the *73 instruction was erroneous said: "We cannot escape the conclusion that defendant's complaint in this respect is well founded. Even though it is true that this instruction counts upon primary negligence, and not the humanitarian doctrine, there was nevertheless no duty upon defendant to take any of the precautions hypothesized therein, unless there was apparent danger of a collision, which basic fact the jury was not required to find. It cannot be said that the law imposes the duty upon the driver of an automobile, upon approaching and entering an intersecting street, to stop, decrease the speed of, or change the course of, his car, merely because he sees another automobile in the street ahead of him. To the contrary, such duty to act would clearly not arise, unless the exercise of due care upon the part of the driver would lead him to believe that otherwise a collision would occur." (Emphasis ours.)
Applying the doctrine of the Stakelback case to the facts in the case at bar, it appears that the instruction herein was erroneous in that it failed to require the jury to find as a prerequisite to a verdict for plaintiff that defendant's bus driver saw or by the exercise of the highest degree of care could have seen plaintiff in such a position on the street that there was danger of the bus striking him unless it was swerved and that failure to swerve the bus under such circumstances was negligence.
The instruction complained of herein undertook to cover the entire case and to direct a verdict for plaintiff and was, therefore, subject to the rule long established in this state which has been stated as follows: "An instruction which purports to cover the entire case and direct a verdict must hypothesize every fact essential to plaintiff's right of recovery, and a failure to do so constitutes reversible error." Walton v. A. B. C. Fireproof Warehouse Co., 233 Mo.App. 693, 703, 124 S.W.2d 584, 590. See also Jones v. St. Louis-San Francisco Ry. Co., 226 Mo.App. 1152, 1158, 50 S.W.2d 217, 220, and Yates v. Manchester, 358 Mo. 894, 217 S.W.2d 541.
In the case at bar the error in instruction No. 3 was of such a nature as to compel the reversal and remanding of the cause for another trial. In view of this result, we deem it unnecessary to discuss other alleged errors inasmuch as they are not likely to occur in another trial.
For the error in giving instruction No. 3, the judgment is reversed and the cause remanded.
ANDERSON, P. J., and BENNICK, J., concur.